## 52197. GLOVER v. THE STATE.

Quillian, Judge.

Defendant appeals his conviction for unlawful possession of more than one ounce of marijuana. He contends that the contraband was found during an illegal search. We do not agree. *Held:*

1. Defendant was arrested on a warrant charging him with the offense of armed robbery as he parked his brother's car in front of a downtown store. He was handcuffed and taken to police headquarters. His car was driven to the police station and parked. One state witness testified that he "advised [the defendant] of the charge and of his rights." Another police officer witnessed defendant being advised of his "rights." Defendant testified that when he first arrived at the police station he told the officers "[he] wanted to make a phone call to [his] parents, and [he] had no more questions to answer or nothing else to say until [he] saw his lawyer." Two state witnesses admitted that defendant said he wanted to call his parents but one witness could not recall if defendant said anything about a lawyer. The remaining state witness said "all [he] heard him say was that he wanted to phone his parents." Both state witnesses testified defendant would have been allowed to make his telephone call as soon as they processed him into the jail — which was standard procedure, but his father arrived during the search of defendant's car and it was unnecessary to make the call.

After defendant was advised of his rights and had requested to make the telephone call, he was presented with a form which was a consent to search his car. The form advised him he did not have to consent. Nevertheless he signed the consent form, and the marijuana, which is the basis of the charge in this case, was found in the trunk of the car.

Defendant contends the consent was involuntary because it was obtained from "an incustody accused . . . after [defendant] had requested and was effectively denied assistance of counsel" and that the state failed to show that the consent was "freely, voluntarily, and knowingly given."

We need not reach these issues as we agree with the state's contention that the search of the automobile was authorized as being incident to the lawful arrest of the defendant.

2. A search, valid at its inception, may violate the Fourth Amendment of the United States Constitution by virtue of its intolerable scope. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). The scope of a search must be strictly tied to, and justified by, the circumstances which rendered its initiation permissible. Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969). Since the holding in Chimel that an "[a]rresting officer may search arrestee's person" and only that area "within the immediate control" of the arrestee, the vitality of prior cases has been questioned — such as Agnello v. United States, 269 U. S. 20 (46 SC 4, 70 LE 145) (1925), which held that "[t]he right without a search warrant contemporaneously to search persons lawfully arrested . . . and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." 269 U. S. at 30.

Chimel expressly overruled Harris v. United States, 331 U. S. 145 (67 SC 1098, 91 LE 1399) (1947), the cornerstone for law enforcement officials to search areas of a house other than the room in which the suspect was arrested. Another restrictive decision of the Supreme

Court of the same era as Chimel, Terry v. Ohio, 392 U. S. 1, supra, stated that a police officer making an arrest may constitutionally make a "limited search" of the arrestee, "confined to what was minimally necessary to determine whether the [arrestee is] armed . . . [and the search must be] confined to ascertaining the presence of weapons."

However, in recent years the Supreme Court has taken another look at the "scope of search" issue, and in United States v. Robinson, 414 U. S. 218 (94 SC 467, 38 LE2d 427) (1973), in which the defendant had been placed in custodial arrest for driving without a driver's permit, and a search of his person produced a cigarette package, and a further search of the cigarette package produced heroin — the court held that "a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment . . . [and] a search may be made of the *person* of the arrestee . . . [and] of the area within the control of the arrestee." Noticeably absent from this last phrase was the restrictive word "immediate" [control] of Chimel. Last but not least, the "limited" search of Terry was expanded to what is now called the "full" search of the person by Robinson. The court cited both Chimel and Agnello with apparent approval, but went on to hold: "Nor are we inclined, on the basis of what seems to us to be a rather speculative judgment, to qualify the breadth of the general authority to search incident to a lawful custodial arrest . . . A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U. S. at 234-235.

In another landmark case, Adams v. Williams, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) (1972), the court affirmed that portion of Terry v. Ohio, 392 U. S. 1, supra, that a police officer may, under appropriate circumstances, approach a person for the purpose of investigating *possible* criminal behavior and may conduct a weapons search, limited in scope, if he is justified in believing that the person is armed and presently dangerous. 407 U. S. at 146. We recognize that Terry was not an "incident to arrest" case but was an investigative "stop and frisk" situation of *possible*

criminal behavior. But more importantly, the court in Adams held that in a legal "stop and frisk" situation, where a weapon is found, "the arrest on the weapons charge [is] supported by probable cause, and *the search of his person and of the car incident to that arrest was lawful*." (Emphasis supplied.) 407 U. S. at 149. If there was any doubt that the court may have come full circle, it was dispelled by denial of certiorari in United States v. Roe, 495 F2d 600, 603 (10th Cir. 1974); cert. den. 419 U. S. 858 (1975)), which held that "[i]t now appears to be settled that an officer at the time of lawful custodial arrest may, without a warrant, make a 'full' search of the person of the accused [Robinson], a limited area within the control of the person arrested [Chimel], *and of an automobile in his possession at the scene of the arrest* for the discovery and preservation of criminal evidence [Adams]." (Emphasis supplied.) 495 F2d at 603.

We are not deterred by the fact that the search of this automobile was not at the scene of the arrest but at the police station. In Texas v. White, — U. S. — (96 SC 304, 46 LE2d 209) (1975), where a warrantless search of defendant's automobile at the police station occurred after his arrest at a bank, his car having been driven to the station house by the police officer — as in the case sub judice, the Supreme Court held that "police officers with probable cause to search an auto on the scene where it was stopped may constitutionally do so later at the station house without first obtaining a warrant." Cf. Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419) (1970); Cady v. Dombrowski, 413 U. S. 433 (93 SC 2523, 37 LE2d 706) (1973).

Accordingly we find the search of defendant's car at the police station, following his custodial arrest at a different location, to be constitutionally permissible as being incident to his arrest.

The remaining enumerations are either mooted by our holding above, or are not meritorious.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

SUBMITTED MAY 5, 1976 — DECIDED JUNE 24, 1976.

*Thomas M. Jackson,* for appellant.
*Claude N. Morris, District Attorney,* for appellee.