## 31733. LINGERFELT v. THE STATE.

HILL, Justice.

On February 26, 1976, the defendant was convicted of the murders of William Cantrell and Larry Lee Mulkey by a Forsyth Superior Court jury. He was sentenced to life in prison. The trial and subsequent conviction were the defendant's third trial and conviction of murder for these same offenses. The earlier convictions were reversed on appeal. *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445) (1973), and *Lingerfelt v. State,* 235 Ga. 139 (218 SE2d 752) (1975). Co-indictee Charles Bennett testified at the third trial.

From the evidence presented the jury was authorized to find the following: Some time before January 6, 1972, Marcus Wayne Ratledge, Herbert Dean Smith,[1] Charles Bennett[2] and the defendant met in the defendant's trailer outside of Cumming, Georgia, and planned to burglarize a drugstore in Cumming across the street from the police station.

At 2:00 a.m. on the morning of January 6, 1972, Bennett, who was a policeman in Buford, Georgia, got off work. Shortly thereafter the four men met according to plan at a roadside park on U. S. Highway 19 south of Cumming. The defendant told Bennett to divert the policeman patrolling in Cumming and keep him occupied while the others burglarized the drugstore. Bennett went to the Cumming police station and had the message relayed to the patrolling policeman that Bennett would like to ride with him. The officer picked Bennett up and they rode around for several hours. The officer never did check the rear of the drugstore or the dress store next door, both of which were burglarized.

When Bennett left the Cumming police station he went to the defendant's trailer. The defendant and his wife were there. Soon Smith and Ratledge came in bringing the loot which the four men divided.

On Saturday, January 8, Ratledge, Bennett and the

---

[1]*Smith v. State,* 230 Ga. 876 (199 SE2d 793) (1973).
[2]*Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973).

defendant met in the defendant's trailer to plan a burglary of the Canongate Golf Course that evening. Bennett met Ratledge and the defendant at the trailer after he finished the 2:00 p.m. to 10:00 p.m. shift in Buford. The three men left in a red Mach I Mustang for the golf course. On the way they stopped at the Globe Oil Station where they were seen and later identified by Jack Johnson, an employee. Bennett let Ratledge and the defendant out at the golf course while he rode around keeping watch. While Bennett was driving around in the early hours of the morning, he was stopped by Officer Bill Cantrell of the Forsyth County Sheriff's Department. Officer Cantrell had seen the red Mustang come out of the golf course parking lot. Officer Cantrell knew Bennett but did not recognize the car. Bennett told Officer Cantrell that he had been unable to sleep and that he was just out riding, that his car was in the body shop in Buford, and that he had borrowed the red Mustang from one of the policemen in Buford.

As soon as Officer Cantrell left, Bennett returned to the golf course to warn the others. The defendant had already left. Bennett and Ratledge loaded the items to be taken in the car and took them to Ratledge's home.

On Sunday, January 9, Officer Cantrell learned that the Canongate Golf Course had been burglarized the night before. Sunday afternoon Cantrell and another officer went to Buford to check on Bennett's statement given the night before. They found Bennett's car sitting in front of the police station, not in the body shop.

On Sunday evening Officer Cantrell and Larry Lee Mulkey stopped at the Globe Oil Station. They described the red Mach I Mustang and asked Jack Johnson to take down the license tag if he saw the car that evening. Later a red Mustang passed, heading north on U. S. 19. Shortly thereafter Officer Cantrell and Mulkey stopped in the service station again and Jack Johnson told them about the red Mustang. The two men left headed north. A few minutes later Mr. and Mrs. Seitz, who had stopped at the Globe Oil Station, paused before reentering the highway and let a red Mustang pass headed south. They entered the highway and in three or four hundred feet they were passed by a sheriff's car with its dome light on. Further

down U. S. 19 they noticed the sheriff's car and the red Mustang pulled off on the side of the road.

Bennett, Ratledge and the defendant were driving around in the red Mustang that night. Bennett was driving; Ratledge was sitting next to him; and the defendant was in the back seat. They drove by the Globe station on U. S. 19 several times that evening. Going south on U. S. 19 they were pulled over by a sheriff's car. Bennett got out of the car and walked back toward the sheriff's car. Officer Cantrell saw that it was Bennett and told him that he wanted to look in the trunk. Bennett opened the trunk and Officer Cantrell reached inside and picked up a little tool. Bennett got back in the car and shut the door. Officer Cantrell asked whose car it was and Bennett pointed to Ratledge. The policeman told Ratledge to get out of the car. Ratledge did so and when he got to where Cantrell was standing he pulled out a gun. Cantrell's hands were handcuffed behind his back and he and Larry Mulkey were forced to walk to the rear of the sheriff's car. Bennett testified at trial that he heard four or five shots and that he drove off with the defendant still in the back seat.

A passing motorist saw a man standing at the trunk of the sheriff's car as if he were trying to close the trunk. There was no one else around and no other car present at that time. After a while Bennett and the defendant returned. Ratledge was slamming the trunk lid down again and again trying to close it. Ratledge got in the Mustang and they drove off.

Several hours later the bodies of Cantrell and Mulkey were found crammed into the trunk of the patrol car. They had both been shot several times with a .357 magnum. On the front seat of the car was a scratch pad with "Clayton County EOX-942" written on it.

The Forsyth County sheriff's office put out an all points bulletin for a red Mach I Mustang with Clayton County license plate EOX-942. The car was spotted in Atlanta early Monday morning and after a high speed chase the Mustang was wrecked and abandoned. Some of the stolen goods were found in the car. Ratledge was eventually captured in the vicinity of the abandoned car. He had in his possession three weapons including the .357

magnum and Officer Cantrell's pistol.

A gun dealer and trader, J. B. Caldwell, had traded the .357 magnum to the defendant in early December 1971. On Tuesday after the murder the defendant asked Caldwell not to say anything about the gun trade to anyone and told him that if anyone asked about the gun to say it had been stolen.

1. The defendant contends that the trial court erred in permitting Charles Bennett to testify when his name was not on the list of witnesses furnished the defendant by the state. Code Ann. § 27-1403 provides that a person charged with a criminal offense shall be entitled to a list of the witnesses on whose testimony the charge against him is founded. It provides that "Without the consent of the defendant, no witness shall be permitted to testify for the State whose name does not appear upon the list of witnesses as furnished to the defendant unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence which the State was not aware of at the time of its furnishing the defendant with a list of the witnesses."

The state gave the defendant a list of its witnesses the week before the trial began on Monday. On Monday morning, before the jury was selected but after the defense attorney arrived at the courthouse, the attorney was given a revised list which had Bennett's name on it. The special prosecutor stated in his place that he furnished Bennett's name to the defendant within ten minutes after he knew that Bennett's testifying was a possibility. In addition, Bennett was a co-indictee whose version of the events of January 1972 was well known to both the defendant and his counsel. See *Lingerfelt v. State,* 231 Ga. 354 and s.c., 235 Ga. 139, both supra.

Since the purpose of Code Ann. § 27-1403 is to "insure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial," (*Hicks v. State,* 232 Ga. 393, 399 (207 SE2d 30) (1974)), the defendant in this case cannot maintain that he has been surprised or unable to interview Bennett through lack of knowledge of the witness. Moreover, the trial judge permitted defense

counsel to delay cross examination of Bennett so as to permit counsel to review Bennett's prior testimony. We find no error in allowing Bennett to testify. *Herring v. State,* 238 Ga. 288.

2. The testimony of state's witness J. B. Caldwell, the gun dealer, was read from a prior transcript because Caldwell had died since the defendant's second trial. Code Ann. § 38-314. The defendant contends that this was error because he was unable to impeach the deceased witness by cross examining him by use of a "newly-discovered" transcript of a probation revocation hearing involving Caldwell held before the first trial. Acknowledging that a witness can be impeached by means other than cross examination, the defendant urges that in order to offer evidence to impeach Caldwell he would have had to forgo his right not to present evidence and his right to open and conclude the closing argument.

A defendant in a criminal case has various constitutional and statutory rights, most of which can be waived. It is not error for the state to present evidence against a defendant, the weight or effect of which is to require the defendant to decide to rely upon or waive his rights. The trial court did not err in admitting the prior testimony.

3. The defendant argues that the court erred in overruling his motion to have the jury view the Globe Oil Station and adjacent street. We find no error here. *Sutton v. State,* 237 Ga. 418 (3) (228 SE2d 815) (1976); *Lackey v. State,* 217 Ga. 345 (2) (122 SE2d 115) (1961).

4. On cross examination, state's witness Jack Johnson undertook to explain his more positive testimony against this defendant by saying that he had been threatened and his house had been burned. Defense counsel moved for a mistrial as to the house burning, conceding that he was aware from the earlier trials of the alleged threat. The court overruled the motion but instructed the jury to disregard the house burning testimony entirely and told them that it had nothing whatsoever to do with the issues involved in the trial. Later during closing argument, while reviewing Jack Johnson's testimony, the district attorney said: "Then later his mobile home was burned." Defense counsel

immediately moved for a mistrial. The court reprimanded the district attorney in the presence of the jury and instructed the jury that the statement was not evidence to be considered in the case. The district attorney apologized to the court and jury.

The defendant maintains that the witness' statement and its repetition in closing argument were so prejudicial that a mistrial should have been declared.

We first find that the court promptly charged the jury to disregard the statement made by Jack Johnson and thus cured any prejudice stemming from his remark. Therefore we find no error in overruling the first motion for mistrial. We find the reference by the district attorney in closing argument to be a different matter. It is true that the court did instruct the jury again to disregard the statement and that the district attorney apologized to the court and jury. Under the circumstances we find harmless error in the overruling of the second motion for mistrial in that it is "highly probable that the error did not contribute to the judgment" of guilty. See *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976). (Because these murders occurred prior to Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972) life sentences were imposed by the court.)

5. The special prosecutor also made a final argument to the jury. In the course of his argument he described the murders as testified by Bennett, he described Bennett's driving off with the defendant in the car and their return to pick up Ratledge, he described Bennett's leaving the car and then he said: "I don't know where Lingerfelt went, because Lingerfelt won't talk, and Ratledge won't talk. I suspect that he went across that half a mile through those bushes, just like he went through the bushes at Canongate." At the close of the special prosecutor's argument the defendant moved for a mistrial on the ground that the statement amounted to a comment on the defendant's failure to testify. The court denied the motion but charged the jury that the defendant is not required to testify and that his failure to testify creates no presumption against him whatsoever. The defendant contends that the court should have granted a mistrial.

In *Howard v. State,* 229 Ga. 839 (1) (195 SE2d 14)

(1972), cert. den. 411 U. S. 950 (1973), this court held that denial of a mistrial was not error where the district attorney during closing argument commented on the defendant's failure to make a statement and the trial court's curative action eliminated from the consideration of the jury such improper comment. We find *Howard* to be applicable here and hence find no error.

Citing *Winget v. State,* 138 Ga. App. 433 (226 SE2d 608) (1976), the defendant urges that in closing argument the special prosecutor repeatedly referred to matters not shown by the evidence; e.g., the mother and father of one of the victims, the widow and children of the other victim. The defendant argues that a mistrial should have been declared and that the court's instructions that the prosecutor should stick to the facts did not cure the errors. We do not find that the argument was so prejudicial or inflammatory as to require a new trial. *Leutner v. State,* 235 Ga. 77 (7) (218 SE2d 820) (1975).

6. The defendant argues that the court's charge to the jury as a whole was unnecessarily favorable to the state. The basis for this contention is the amount of time spent charging on the state's theory of the case, credibility of witnesses, etc., compared to the charges favoring the defendant. The state called over 30 witnesses; the defendant offered no evidence. The state's evidence was both direct and circumstantial from lay and expert witnesses. The state's theory against this defendant, since he was not shown to be the trigger man, was conspiracy to commit burglary. Under these circumstances it was inevitable that the court's charge to the jury would deal more with the state's case than with the defendant's defense.

The defendant also asserts that the charge on reconciling conflicting evidence amounted to directing the jury to return a verdict of guilty since there was no testimony on behalf of the defendant. The charge has been approved by this court. *Campbell v. State,* 237 Ga. 76 (4) (226 SE2d 601) (1976); *Gordy v. State,* 236 Ga. 723 (225 SE2d 287) (1976). In *Spencer v. State,* 236 Ga. 697 (6) (224 SE2d 910) (1976), we found no error where a trial court charged on reconciling conflicting statements although the defendant had presented no evidence. There is no

merit to this enumeration of error.

7. The defendant raises the general grounds. We find sufficient evidence to support the verdict and hold that the verdict is not contrary to the law.

*Judgment affirmed. All the Justices concur.*

SUBMITTED DECEMBER 3, 1976 — DECIDED FEBRUARY 14, 1977.

*Maylon K. London,* for appellant.

*C. B. Holcomb, District Attorney, Frank C. Mills, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Staff Assistant Attorney General,* for appellee.