## 53514. THE STATE v. HANDSPIKE.

Submitted March 2, 1977 — Decided April 7, 1977 — Rehearing denied April 27, 1977 —

*Hinson McAuliffe, Solicitor, Charles Hadaway, Assistant Solicitor,* for appellant.

*Isaacs, Comolli & Polonsky, Thomas K. Isaacs, John M. Comolli,* for appellee.

DEEN, Presiding Judge.

The state offers two theories, concededly contradictory, to uphold the validity of this search and seizure: one, that the search and seizure is valid under the Terry v. Ohio "stop and frisk" rationale; two, that the appellee was under lawful arrest and the search and seizure was a valid incident thereof.

1. The facts of this case justify the officer's approach of a car, dangerously parked at night on a one-way street marked with "No Parking" signs. The policeman's testimony was that his initial interest in the vehicle was its location rather than the activity which might have been taking place inside. Under this set of circumstances, coupled with the presence of wine and glasses in the car, the smell of alcohol on the appellee's breath, and the presence of suspected juveniles, the officer's request for the presentation of a driver's license for identification was proper. *Anderson v. State,* 123 Ga. App. 57 (179 SE2d 286). In the interest of effective crime prevention and detection"...a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U. S. 1, 22 (88 SC 1868, 20 LE2d 889). And in the course of this investigation the discovery of the revolver on the floor of the appellee's car amply justified a "pat down" for other weapons though not for a "full" search. Id., 392 U.S. p. 26. "... [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that

his safety or that of others was in danger." Id., 392 U.S. p. 27. And in the course of this "pat down" of the appellee, the discovery of the "small little bulge," which the officer testified he thought might have been some sort of weapon, justified the search itself and the seizure of the "bulge" from the concealment of the appellee's clothing. "The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id., 392 U. S. p. 29.

The "small little bulge" turned out to be an opaque rolled-up manila envelope. The officer testified that he knew when the bulge was revealed that it was not a gun or knife. The officer took the envelope and opened it and only then discovered a quantity of marijuana less than an ounce. At the point that the officer discovered that the "bulge" was only an opaque envelope and not a weapon, his authority to further search inside the envelope under Terry ended. "At that point the 'frisk' ceased being a search for weapons and became a search for evidence. 'Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer or of others nearby, not to procure evidence for use at a subsequent trial.' *Jones v. State,* 126 Ga. App. 841, 844 (192 SE2d 171)." *Brown v. State,* 133 Ga. App. 500, 501 (211 SE2d 438). ". . . [A] 'frisk,' if legal at all, is such only in exceptional circumstances and only for the very limited purpose of assuring the officer that the suspect whom he must accost is not going to turn upon him with a weapon. . . A thorough search of the suspect such as to turn up a small amount of marijuana on her person can never be justified by referring to it as a 'frisk.' *Holtzendorf v. State,* 125 Ga. App. 747 (188 SE2d 879)." *L. B. B., III v. State of Ga.,* 129 Ga. App. 163 (198 SE2d 895). When the officer here discovered the bulge was not a weapon his authority to search further ended, and his intrusion into the "small little" envelope, because of his "interest" in the contents rather than a concern for his own safety, was a "general exploratory search" not justified under the Terry ruling.

2. The state urges that the search and seizure can be upheld as incident to a "lawful arrest." Code Ann. §

27-301.

We disagree. The appellee was not "under arrest" at the time of the search. The evidence shows that the officer approached the appellee's vehicle initially because of the hazard it presented to other traffic, and became suspicious when he discovered wine and cups in the car. He did not see the appellee furnish wine to anyone, did not see anyone drinking it, and smelled alcohol only on the appellee's breath. The policeman testified that the appellee said he had given the "other girls" some wine and that to the officer the "other girls" appeared to be juveniles and that he knew they were high school students (though apparently he did not determine that the "other girls" were in fact under 18 until *after* the search of the appellee and the seizure of the marijuana.)

The officer never informed the appellee that he was under arrest for any crime. What he did do was ask the appellee to step out of the car and present his driver's license; this was proper under the circumstances. ". . . [C]ircumstances short of probable cause for arrest may justify the stopping of a pedestrian or motorist for limited questioning . . . a request for identification and driver's license. . ." *Anderson v. State,* 123 Ga. App. 57, 60, supra. The officer's own testimony was that at this point he wanted only identification; he did not testify that his purpose was to seize the appellee. It was only after he saw the gun that the officer forced the appellee to submit to a "frisk" for weapons; yet the officer also testified that he did not view the gun as a violation of any law but rather as a threat to his own safety during the questioning of the appellee.

This factual situation presents the classic Terry confrontation between an officer questioning a suspicious person and a suspect who may be armed. Under these circumstances the suspect may be "frisked" for weapons, he may not be "searched" for evidence. The evidence here clearly supports the conclusion that the appellee was "stopped and frisked"; it does not support the conclusion that the appellee was "arrested and searched." It was during the "frisk" that the officer exceeded the limits of the Fourth Amendment and seized marijuana from an envelope. ". . . [T]he police may not delay the arrest of a

suspect or use a Terry rationale as a subterfuge to coerce the suspect into incriminating himself. . ." *Shy v. State,* 234 Ga. 816, 821 (218 SE2d 599).

*Judgment affirmed. Bell, C. J., Quillian, P. J., McMurray, Smith and Shulman, JJ., concur. Webb, Marshall and Banke, JJ., dissent.*

MARSHALL, Judge, dissenting.

I must respectfully register my dissent to the conclusion of the majority opinion wherein it holds that the arrest in this case was without probable cause, rendering the product of the search and seizure flowing therefrom illegal.

Appellee concedes that when he was ordered to remove himself from the automobile, he was, in contemplation of law, under arrest. The trial court also reached this same conclusion. Neither does appellee contest the right of the police officer to approach the automobile to investigate the reason for the car being parked in such a dangerous place.

As I view the facts, the evidence disclosed that the arresting officer saw in plain view an opened, partially consumed bottle of wine with several cups also plainly visible. The officer smelled alcohol on the breath of the appellee. He recognized the two female occupants of appellee's car as being minors presently attending high school. Finally, by appellee's admission, appellee had furnished these minors some of the alcoholic beverage. Such conduct on its face presents reasonable and prima facie evidence that a felony in violation of Code § 58-612 had been committed and that such felonious conduct was likely to continue. Though the officer did not see appellee actually furnish the minors alcoholic beverages, the direct, probative and reasonable evidence irresistibly points to the conclusion by a reasonable man that a felony had been or was being committed in his presence. See *Young v. State,* 238 Ga. 548.

It is well settled that an officer at the time of a lawful custodial arrest may, without a warrant, make a *full* search of the person of the accused (United States v. Robinson, 414 U. S. 218 (94 SC 467, 38 LE2d 427)), a limited area within the control of the person arrested

(Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685)) and of an automobile in his possession at the scene of the arrest for the discovery and preservation of criminal evidence (Adams v. Williams, 407 U. S. 143 (92 SC 1921, 32 LE2d 612)). *Glover v. State,* 139 Ga. App. 162, 165 (227 SE2d 921).

The arrest of the appellee being lawful, in my opinion, the resultant search and seizure likewise was lawful as being based upon and flowing from that arrest. It follows that the conclusion of the trial court that the arrest was not based upon probable cause was error. Accordingly, I would reverse the order and judgment of the trial court.

I am authorized to state that Judge Webb and Judge Banke join in this dissent.