## 72405. CALLAHAN v. THE STATE.

(347 SE2d 269)

BIRDSONG, Presiding Judge.

Rolland Callahan was indicted for possession of cocaine and possession of a firearm while a convicted felon. The weapons' possession charge was severed by the trial court. Callahan was convicted by jury of possession of cocaine and sentenced to serve ten years. He appeals enumerating some twenty-three asserted errors. *Held*:

In early December 1984, one Marcel Cardenas presumably was dispatched by underworld figures in Miami to deliver a quantity of cocaine to "pushers" in the Atlanta area. Cardenas delivered the cocaine to various people. While in Atlanta he resided with a woman named Honeycutt. He gave a quantity of the cocaine to Honeycutt. She in turn delivered it to a third person and thence to one Skinner but without obtaining cash payment for the cocaine. When Cardenas realized that Honeycutt had allowed cocaine to be transferred without cash payment, he demanded return of the cocaine or equivalent cash. Ultimately a smaller amount of cocaine was returned and some cash. However, Cardenas contended that he was short $15,000 of cocaine or cash. Because Skinner allegedly was the one who had shorted Cardenas of either cash or cocaine, either Miami figures or someone in Atlanta determined that Skinner would be eliminated.

The foregoing version of Cardenas' statement was not obtained until at least January 18, 1985. An investigation conducted by Officer Mabe concerning an attempt to execute a "contract" on Skinner showed a different sequence of events. Mabe received a call on December 5, 1984 that a shooting attempt had been reported by Skinner to the police. Mabe's investigation disclosed that Skinner, his wife, and child were departing their home in Decatur early on the morning of December 5. Skinner was the holder of a black belt. As Skinner started to drive away, he noticed a grey or light blue vehicle rapidly approaching the cul-de-sac where Skinner's house was located. This other car came to within ten or fifteen feet and stopped. A person dismounted, ran around the back of the grey or blue car and approached Skinner. Skinner saw this person had a rifle. This person (Cardenas) pointed the rifle at Skinner and pulled the trigger. The

gun misfired. Before a new attempt could be made, Skinner, using his karate expertise, disarmed and subdued his assailant. While this was occurring, a second person in the grey or blue car fired one or more shots at Skinner but without hitting him. Though Skinner could not make a positive identification, he believed this person to be one Daniel Wade. Skinner maintained control of Cardenas until police officers arrived and arrested Cardenas.

Skinner related to Mabe he had been in business with Rolland Callahan in a karate studio business. Because of several disagreements, Skinner had withdrawn from this business venture and begun his own karate studio. This rupture of business relations had occurred several months previously. Callahan had advanced approximately $100,000 "front" money to establish their joint business. When Skinner withdrew from the business, Callahan accused Skinner of taking the $100,000. Also numerous customers from the old business followed Skinner to the new karate studio. Skinner was aware that Callahan used their common business venture to launder drug money and had accompanied Callahan on many excursions where Callahan had engaged in drug trafficking. Thus, Skinner knew of considerable damaging information concerning Callahan's extracurricular activities. An earlier attempt on Skinner's life had occurred in November 1984, and Skinner at that time had suggested Callahan as a suspect.

Shortly after Labor Day 1984, Callahan visited Skinner and suggested Skinner return to the business. When Skinner refused, Callahan stated "I guess I'll have to turn loose the dogs," which Skinner considered to be a threat. Skinner told Mabe he strongly suspected Callahan was behind the attempt to kill him (Skinner) because Callahan accused him of stealing $100,000; that Skinner was intimately aware of his drug activities and Callahan probably feared that Skinner would go to the police. Skinner described Callahan as being a very dark complected black man with "processed" hair and a gold tooth. Skinner also stated there were several other men involved in the karate-drug business including Daniel Wade.

Mabe then interviewed Cardenas on December 5, 1984. Cardenas related a different story than the one obtained on January 18, 1985. The woman Honeycutt, with whom Cardenas was staying, told Cardenas of a "murder plot." Cardenas, desiring to earn $15,000, was introduced to one Callaway (Chuck) by Honeycutt and Chuck in turn introduced Cardenas to Wade. Wade informed Cardenas that a contract was out on Skinner and that Cardenas could earn $15,000 by being the hit man. Shortly before the murder attempt, Chuck, Cardenas and Wade were at a home believed (erroneously) by Cardenas to be Callahan's home though Cardenas did not know Callahan by name. A dark complected black man with "processed" hair and a gold tooth entered. This black man and Wade went into another room and in a

few moments, Wade returned and gave Cardenas $7,000, promising the remaining $8,000 when the homicide was completed. The black man with the gold tooth left without speaking to Cardenas. On December 5, with Wade driving, Cardenas and Wade went to Skinner's home where Cardenas made the attempt to shoot Skinner, resulting in his being disarmed and captured by Skinner. On December 6, 1984, an arrest warrant was obtained for Callahan (among others) for the crime of attempted murder.

On December 7, 1984, while driving on Memorial Drive, Skinner saw parked at a Goodyear store a Lincoln auto frequently driven by Callahan. Shortly thereafter, Skinner saw a woman he recognized as Callahan's wife drive up in a second car and Callahan dismounted, walked over to the Lincoln, placed a briefcase in the car and then entered the Goodyear store. Skinner called the police to report the sighting of Callahan. Two police cars responded. Shortly, Callahan was seen leaving the Goodyear store and walking over to the Lincoln as if to drive away. The police blocked the Lincoln, and Callahan was ordered to get out of the driver's seat. He was searched, had no identification on his person, but stated it was in a small leather bag (apparently a wallet) in the backseat of the Lincoln. The second vehicle approached and Mabe (a passenger in the second patrol car) looked on the front seat of the Lincoln and saw a brown leather briefcase partially open. In plain sight was the handle of a revolver and a clear plastic bag containing a white powder which Mabe suspected to be cocaine. An additional small amount of cocaine was found in the small brown bag (wallet) contained within the briefcase. A third packet of cocaine was found in Callahan's left breast pocket. Mabe reached into the briefcase and found in the smaller brown bag (wallet) Callahan's driver's license and numerous other cards and papers identifying Callahan.

At a subsequent preliminary hearing on the charge of attempted murder, the examining magistrate concluded there was insufficient evidence to warrant a charge of attempted murder (apparently either Cardenas did not testify at that hearing or offered contradictory versions of the incident). An indictment was returned against Callahan for possession of cocaine (in an amount in excess of 23 grams) and possession of a firearm by a convicted felon.

Any further discussion of facts necessary to the disposition of the enumerations of error will be included upon consideration of the relevant enumeration of error.

1. Even though in enumerations 14 and 15, Callahan contends that at trial he admitted the arrest warrant was legal, in order to keep out evidence of other crimes, at the pretrial motions he did not so concede. Thus, eleven of Callahan's 23 enumerations of error deal with the lawfulness of the search of Callahan's person and of his car

incident to his arrest. In enumerations 1, 2, 3, and 5, Callahan contends as a matter of law that the superior court was bound by doctrines of res judicata, collateral estoppel and laches. Callahan argues that the magistrate's conclusion there was no probable cause to bind Callahan over on the charge of attempted murder becomes res judicata as to the state. Thus he argues if there was no probable cause to bind him over there likewise was no probable cause to arrest him in the first place for attempted murder. His argument continues that if there was no probable cause to arrest him, the arrest at his automobile on a spurious charge of attempted murder rendered the arrest illegal. He contends that in light of the illegal arrest, the seizure of cocaine from his car, his wallet and his pocket likewise was illegal and should have been suppressed by the trial court. Callahan cites a plethora of cases supporting doctrines of res judicata, collateral estoppel and laches.

We conclude that none of these doctrines has any applicability to this case under the circumstances attending Callahan's arrest. A dismissal of charges based upon lack of probable cause does not bar the subsequent indictment and trial of a defendant on the same charges. *Smith v. State*, 171 Ga. App. 279, 282 (319 SE2d 113). See also *Wells v. Stynchcombe*, 231 Ga. 199 (200 SE2d 745). If a defendant can be indicted and tried on a charge that was dismissed for lack of probable cause in a magistrate court, a fortiori a trial court is not bound by a magistrate's finding of lack of probable cause to bind over a case on the separate consideration of an interlocutory issue of the validity of the issuance of an arrest warrant. Furthermore, the doctrine of collateral estoppel applies to issues of ultimate fact resolved against the state by a final judgment. *Lindsey v. State*, 227 Ga. 48, 52 (178 SE2d 848). In this case, the magistrate's finding of lack of probable cause to bind Callahan over for attempted murder did not constitute a judgment in the sense that it settled the guilt or innocence of the accused. *Wells v. Stynchcombe*, supra. Finally, the doctrine of laches is an equitable doctrine and may not result in interference in a criminal prosecution. OCGA § 9-5-2; *Ray v. City of Dalton*, 191 Ga. 46 (11 SE2d 193). Accordingly the doctrine of laches does not apply in this case. Moreover, at the time of the hearing on probable cause to bind Callahan over on a charge of attempted murder, an entirely different factual situation was presented than that presented to a different magistrate considering the issuance of the arrest warrant. Cardenas had substantially changed his rendition of what had occurred on December 5 by giving a different version on January 18, 1985 and indeed had changed his story several times. The issues raised by these enumerations are not meritorious.

2. In enumerations of error 6, 7, 8, and 12, Callahan contends as a matter of fact there was no probable cause to believe appellant was

guilty of attempted murder so as to justify his arrest therefor, thereby invalidating the search and seizure of the gun and cocaine underlying this conviction.

Callahan bases this argument on the contention that Cardenas' conflicting stories did not support the statements made by Mabe in the affidavit used to support the issuance of the arrest warrant. Indeed, Callahan contends that Mabe's statements in the affidavit were so far from the truth or were so recklessly made as to render the arrest warrant illegal as a matter of law.

We must evaluate the reliability of the information furnished the magistrate in the affidavit and the affiant's oral support thereof upon the information known to the affiant at the time of the issuance of the arrest warrant. As this court held in *Maxwell v. State*, 127 Ga. App. 168, 170 (193 SE2d 14), the time within which proof of probable cause must be considered by the magistrate must be of facts closely related to the time of the issuance of the warrant so as to justify such finding at that time. Thus, we reject appellant's arguments that the conflicting statements given by Cardenas on and after January 18, 1985 should be or must be considered in determining probable cause for an arrest warrant issued on December 6, 1984.

The test of probable cause for the issuance of an arrest warrant is whether it would justify a man of reasonable caution in believing that an offense has been or is being committed, and this requires merely a probability — less than a certainty but more than a mere suspicion or possibility. *Brown v. State*, 151 Ga. App. 830, 831 (261 SE2d 717).

Appellant would have us apply the standards of probable cause applicable to a search warrant to the standard for issuance of an arrest warrant. His cases in support of his argument principally relate to probable cause issues in search warrants. However, the Georgia Supreme Court has held that the probable cause requirements for a search warrant are stricter than for an arrest warrant. *Smith v. Stynchcombe*, 234 Ga. 780 (218 SE2d 63).

We reject the argument that Mabe lied or in any way attempted to mislead the magistrate in order to obtain on spurious grounds an arrest warrant. While it may be true that Mabe was misled by Cardenas, we are satisfied that Cardenas' statement given on December 5, 1984, contained sufficient facts connecting Callahan to an attempted murder to cause a reasonable man to believe that Callahan was part of the murder attempt. Skinner told Mabe that Callahan was behind the attempt on his life. He supplied Mabe with a motive for the attempted murder for hire and described Callahan on December 6 in a manner almost identical to the description furnished by Cardenas as the person who supplied (through Wade) Cardenas the money for the murder for hire. Additionally, Cardenas stated that he had been told by Wade the reason Skinner was to be killed was because Skinner

owed money and the hirer was afraid that Skinner would become a police informer. The motives furnished by Cardenas matched the motives suggested by Skinner. Based on the facts stated hereinbefore, we are satisfied there existed sufficient facts to establish probable cause as contemplated by the law to believe Callahan was involved in the attempted murder. It follows appellant's arrest was lawful and the search of him and his car incident to his arrest was lawful as well. *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612); *Glover v. State*, 139 Ga. App. 162, 165 (227 SE2d 921).

3. Appellant argues in enumerations of error 4, 11 and 13 a denial of constitutional protections because the magistrate issuing the arrest warrant did not make a record of oral statements by the affiant Mabe nor did Mabe retain his rough notes of the first interview with Cardenas. It was admitted by Mabe that he made rough notes in his file of the December 7 interview with Cardenas. But after Cardenas significantly modified his story on January 18 and thereafter, Mabe concluded the first statement by Cardenas was valueless and would no longer be pursued. Thus, he destroyed his rough notes. As to what information was furnished the magistrate by Mabe's oral testimony can only be reconstructed from Mabe's recollection as furnished to us by Mabe's testimony at the suppression hearings in this case. Neither the state nor Callahan called the magistrate as a witness. It is uncontested, however, that the magistrate did not record Mabe's oral testimony given in support of the affidavit which caused the issuance of the arrest warrant in this case.

We agree the better practice in presenting oral testimony given by police officers to a magistrate on a motion to suppress should be via an official record or transcript of the hearing before the magistrate rather than relying solely on the recollection of the affiant. *Powell v. State*, 170 Ga. App. 185 (316 SE2d 779); *Pines v. State*, 166 Ga. App. 724, 726 (305 SE2d 459). In fact in the *Pines* case, supra, this court suggested to magistrates that in the absence of official recordation, the magistrate should make some written notation or memorandum as to oral testimony presented to them in support of the issuance of a warrant.

Nevertheless, we are aware of no requirement in the law of Georgia that requires rather than suggests that a magistrate court warrant hearing be recorded. (We reiterate the desirability of such a practice.) We will look to the evidence presented to the issuing magistrate to determine if constitutional standards were met. The burden falls upon Callahan to show the absence of procedures sufficient to satisfy his constitutional rights. The affiant testified under oath as to what he told the magistrate. That affiant was subject to unfettered cross-examination by Callahan. If Callahan was dissatisfied with the affiant's recollection, Callahan was entitled to call the magistrate to con-

tradict or disclose other circumstances. The state offered full disclosure as to the hearing through the recollection of one who participated therein. We do not find that there is a total absence of probable cause evidence to the constitutional deprivation of the appellant in this case. Appellant also argues that he was denied his *Brady* discovery rights because Det. Mabe destroyed all notes of the first interview with Cardenas. We agree that the better practice would have been for Mabe to retain all his investigative notes. Nevertheless, we have held that *Brady* does not demand state agents to retain rough notes made in the course of their investigation. *Hurt v. State*, 175 Ga. App. 207 (332 SE2d 907). Once again we observe that Mabe was available to the defense for full cross-examination and exposure of what notes and observations he had made throughout the entire investigation. We conclude therefore that neither the magistrate's failure to record Mabe's testimony at the arrest warrant hearing nor Mabe's failure to retain notes of his first interview with Cardenas amounts to constitutional failures nor does either establish cause for reversal of Callahan's conviction.

4. In enumerations 14 and 15, Callahan complains the state was allowed to introduce underlying facts in support of the arrest warrant on a charge of conspiracy to commit murder. Callahan repeatedly offered to stipulate that the arrest warrant was valid and objected repeatedly to the state's attempt to introduce underlying facts (even though in eleven enumerations, inconsistently he earnestly contends the arrest warrant was illegal). He now complains that the admission of this testimony improperly placed his character into evidence.

Testimony of the conspiracy to commit murder was proper to explain why the police arrested Callahan and searched his car resulting in the finding of cocaine. We conclude that the cause for the issuance of the warrant and the circumstances of the arrest were appropriate for the jury's consideration.

After this testimony had been received, Callahan obtained an admission from Mabe that the conspiracy charge against Callahan had been dismissed by the magistrate for lack of probable cause. Over objection, the prosecutor was then allowed to develop through Mabe that a grand jury was investigating a murder conspiracy charge against appellant or at the least a grand jury had received evidence on such a charge. Upon further objection, this objection was sustained by the trial court. However, counsel for Callahan did not request the court to strike the testimony to which objection had been made nor to give curative instructions. Sua sponte the trial court limited the testimony concerning the grand jury hearing to the purpose of explaining the conduct of the police officers at the time of the arrest.

All circumstances connected with an arrest are proper matters to be submitted to a jury to be weighed by them for what they are

worth. *Scott v. State*, 172 Ga. App. 725 (324 SE2d 565); *Ashley v. State*, 160 Ga. App. 325 (287 SE2d 321). The fact that such evidence may incidentally indicate appellant's participation in another crime does not render such evidence inadmissible. *Frazier v. State*, 150 Ga. App. 343 (258 SE2d 29). These circumstances are admissible as part of the res gestae of the arrest. *Katzensky v. State*, 228 Ga. 6, 7 (183 SE2d 749). Assuming error, arguendo, that error would have been cured by the trial court's instruction to the jury that they were to pay no attention and give no weight to any evidence about an ongoing investigation. The trial court's instructions were clear and forceful and we will presume that the jury complied with the court's instructions. Even in the face of a motion for mistrial, we conclude the trial court committed no error. *Dunn v. State*, 251 Ga. 731, 734 (309 SE2d 370).

5. In enumerations 16, 17, 18, and 19, Callahan contends the trial court erred by denying a motion for mistrial based on alleged improper argument by the prosecutor. During his argument, the prosecutor characterized the appellant as a prosperous criminal. The prosecutor painted a picture of this prosperous criminal getting out of a big Mercedes and going over to a big Lincoln with his bag and his pockets full of dope. He argued the appellant had much money in cash. He did not even need a checkbook or a credit card, and that he paid cash for a set of tires at the Goodyear store for the Lincoln.

The prosecutor argued facts which were in evidence. Callahan dismounted from a Mercedes and walked to a Lincoln. His bag, his wallet and his pockets did contain cocaine. Over $400 in cash was recovered from the briefcase. An additional amount in excess of $400 was found in his pocket and he did indeed pay cash for a set of tires.

Attorneys will be allowed all reasonable latitude in the argument of cases to a jury provided they do not go outside the facts legitimately appearing from the trial and "lug" in extraneous matters as if they were part of the case. *Hamilton v. State*, 131 Ga. App. 69, 71 (205 SE2d 24). Counsel may draw remote deductions and inferences from the evidence and there is no basis for objection even if the deductions and inferences are illogical or unreasonable. *Owens v. State*, 120 Ga. 209, 210 (47 SE 545).

The prosecutor referred to the loaded pistol found in Callahan's briefcase and asked the rhetorical question: How serious was Callahan about his drug business? Was he serious enough to kill? The prosecutor left the inference, if any, to be drawn by the jury. Once again, each of these facts and inferences submitted to the jury are supported by evidence of record. The denial or grant of a motion for mistrial falls within the sound discretion of the trial court. *Johnson v. State*, 142 Ga. App. 526 (236 SE2d 493). The court's ruling on a motion for mistrial will not be disturbed on appeal unless it is shown that the

trial judge manifestly abused that discretion. *McCorquodale v. State*, 233 Ga. 369 (211 SE2d 577). We find no abuse of discretion in this case.

A third portion of the prosecutor's argument called to the attention of the jury that drugs constituted a terrible problem in this country. He then said: "I'm asking for your help. If you see the evidence like I've laid out the evidence, I'm pleading with you, I'm begging you to help me."

Callahan contends this argument constitutes a personal appeal of the prosecutor and when the argument was made, moved unsuccessfully for a mistrial. The jury was instructed to recall the court had sustained an objection to comments about asking for help. The court told the jury that such argument was improper and required the jury to disregard any remarks along those lines.

Even if the prosecutor's comments were inappropriate, we do not conclude the remarks to be prejudicially improper. Within context, it is clear the state was arguing the need for law enforcement. A prosecutor indeed may argue that as a part of the jury's duty, it is to convict so as to stem a drug problem in that area. *Head v. State*, 160 Ga. App. 4 (285 SE2d 735). It is not improper for a prosecutor to appeal to the jury to consider the safety of the community and the desired result of general prevention of crime. *Burke v. State*, 153 Ga. App. 769 (266 SE2d 549). A prosecutor's comment to jurors that they could take part in the war against drug trafficking by convicting the defendant is not an improper appeal. *Black v. State*, 167 Ga. App. 204 (305 SE2d 837).

Moreover, we are satisfied that the curative instructions to the jury cured any potential harmful error in the prosecutor's remarks. The trial court acted immediately by charging the jury to disregard the improper statement and by characterizing the argument as improper and to be disregarded it amounted to a rebuke of counsel. *Vernon v. State*, 152 Ga. App. 616, 617 (263 SE2d 503). See also *Ward v. State*, 252 Ga. 85 (311 SE2d 449). If Callahan desired a more vigorous rebuke, he failed to indicate his desire in this transcript. As a result, he cannot now complain of the court's failure to more affirmatively rebuke the prosecutor. *Phillips v. State*, 230 Ga. 444 (197 SE2d 720).

Finally, if Callahan was not satisfied with the trial court's action, he was obligated to renew his motion for mistrial. In the absence thereof, Callahan is precluded from raising this issue on appeal. *Delaney v. State*, 154 Ga. App. 772 (270 SE2d 48). For all the foregoing reasons, we are satisfied Callahan is not entitled to a new trial based on the prosecutor's closing argument.

6. In enumerations 10 and 22, Callahan complains the trial court erred in denying motions for directed verdict of acquittal because (1)

the Lincoln searched belonged to Callahan's brother-in-law and therefore the principle of equal access applied and (2) there was no direct evidence that the substance taken from his person at the time it was seized was cocaine.

As to the contention that the Lincoln was not his, the evidence reflects that Callahan was a frequent operator of the car. Skinner thought it was Callahan's car. Callahan received a traffic ticket while driving the car and purchased a set of tires for that car. At the time of the arrest on December 7, the facts support the conclusion that the Lincoln in which the cocaine was found belonged to appellant. Moreover, appellant was seen carrying the briefcase in which the cocaine was found, obviously exercising dominion over it. He was seen placing the briefcase into the car. When asked for his driver's license, he stated it was in the bag, clearly indicating that he was aware of the contents of the briefcase. Cocaine was found in a small leather bag (wallet) which also contained many indicia of identification pertaining to Callahan and a third quantity of cocaine was found in Callahan's breast pocket.

The issue of equal access was presented fully by the evidence to the jury. The jury was charged clearly and sufficiently on the principle. The law concludes that the driver of a car is in control of that car and possesses the contents of it. While evidence of equal access may rebut the presumption, whether the evidence of equal access is sufficient is a question for the jury. *Moore v. State*, 155 Ga. App. 149 (270 SE2d 339). The evidence presented to the jury was far more than a simple presence of the appellant where cocaine was found.

Though Callahan suggests that Skinner had an opportunity and motive to place cocaine in the car before Callahan appeared on the scene, such circumstantial evidence is so remote as to be without probative value. Not only did Skinner deny being in or near the Lincoln but the evidence reflects further that the briefcase containing cocaine was placed in the car by Callahan himself. We are satisfied that the trial court did not err in denying directed verdict of acquittal based on the equal access doctrine. *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590).

The second facet of this argument relies upon the testimony of the expert witness who testified that based on the tests he conducted for the presence of cocaine, he could only verify the presence of cocaine in each of the three quantities tested by him. The defense argued that a minute amount of cocaine from any source, i.e., from one of the three bags found, or from the atmosphere of the lab itself, could have contaminated one or all of the three bags tested. Thus, because of the possibility of improper handling (i.e., all three bags were placed in one large evidence bag for delivery to the laboratory), it is contended the state could not and did not prove the substance

found in Callahan's coat pocket contained cocaine prior to seizure.

Appellant directed this argument to the small packet of cocaine found in Callahan's breast pocket. This assumes that the two other bags of cocaine found in the car cannot be used against Callahan because of the equal access problem.

We have already indicated that the jury could have ignored the equal access doctrine and found with much factual support that ownership of the cocaine found in the briefcase was in Callahan. Furthermore, the expert testified that he tested each of the envelopes containing white powder and each tested positively for the presence of cocaine. The law does not require that one charged with possession of cocaine must be possessed of only a particular source of cocaine. It is sufficient if he be found in possession of any cocaine at all. The expert gave testimony that authorized such a finding. The jury made such a finding and the jury's finding is supported beyond a reasonable doubt. We conclude that the evidence submitted to the jury before the trial court was sufficient to convince a rational trier of fact to find beyond a reasonable doubt that the cocaine found was in the exclusive possession of Callahan when he was arrested and that the substances seized were in fact cocaine at the time it was seized. The trial court did not err in denying the motion for directed verdict of acquittal. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560).

7. Appellant urges in enumerations 20 and 21 that the state erred in failing to comply with his right to discovery in the face of a *Brady* motion directed to specific evidence. In general, the evidence at the motion for new trial shows that an attempt had been made by "Doc" Holiday upon Skinner's life in November 1984. Holiday gave a confession admitting the attempt upon Skinner in November 1984. He stated he was offered money for a second attempt upon Skinner's life but declined. He stated the reason for the contract was that Skinner had held out cocaine or money from "the family." This confession by Holiday was not given to the defense in response to a *Brady* motion seeking information about attempts upon Skinner's life prior to December 1984.

Appellant argues that had he been given access to Holiday's confession, he could have possibly shown a motive for Skinner to implicate Callahan in a drug scheme by planting cocaine in Callahan's car.

There is no constitutional requirement that the prosecution make an accounting to the defense of all police investigatory work on a case. *Moore v. Illinois*, 408 U. S. 786, 795 (92 SC 2562, 33 LE2d 706). The *Brady* rule applies only to exculpatory information. *Jackson v. Wainwright*, 390 F2d 288 (5th Cir. 1968); *Hicks v. State*, 232 Ga. 393 (207 SE2d 30). Moreover, not only must the requested information be exculpatory, it must be material. *Gross v. State*, 161 Ga. App. 489 (288 SE2d 733). The mere fact that some undisclosed information might

conceivably have helped the defense or might possibly have affected the outcome of the trial does not establish materiality in a constitutional sense. *Castell v. State*, 250 Ga. 776 (301 SE2d 234). To establish a *Brady* violation leading to reversal, Callahan must show he was materially prejudiced by not getting the requested information, *Williams v. State*, 251 Ga. 749, 789 (312 SE2d 40); *Clayton v. State*, 145 Ga. App. 541 (244 SE2d 67), even to the extent that the denial of the information impaired his defense so that he was denied a fair trial within the meaning of the *Brady* rule. *Rose v. State*, 249 Ga. 628 (292 SE2d 678); *Duncan v. State*, 163 Ga. App. 148 (294 SE2d 365).

Even speculation cannot make a November attempt by Holiday to kill Skinner relevant, material or exculpatory with regard to Callahan's trial for possession of cocaine. The evidence at trial reasonably excludes either a motive or an opportunity for Skinner to plant cocaine upon the person of or in the car operated by Callahan. Even assuming error by the state in failing to make available to Callahan the information concerning Holiday, there has been no showing that the evidence was exculpatory or harmful. We conclude therefore that the trial court committed no error when it denied Callahan's motion for new trial on this basis.

8. Appellant's enumerations 9 and 23 deal with the charge of the court. Callahan contends it was error to give the standard charge concerning evaluation of credibility because he offered no evidence, and this required the jury to believe each of the state's witnesses.

This contention that the court's charge on credibility of witnesses where no evidence was offered by the defense was error, has already been settled adversely to him. See *Lingerfelt v. State*, 238 Ga. 355, 361 (233 SE2d 356). There is no merit to this enumeration.

In his twenty-third enumeration of error, Callahan complains the trial court erred because it did not charge as requested that the state must prove beyond a reasonable doubt that the suspected contraband contained cocaine at the time it was seized.

We have already rejected the equal access argument advanced in support of this requested charge. The trial court charged the jury that it was unlawful for any person to possess or have under his control cocaine. It defined actual and constructive possession, as well as sole and joint possession. The court charged on equal access. This adequately informed the jury that the substance found under the control and possession or on appellant's person had to be found to be cocaine. This included the time at which it was seized. Therefore, we are satisfied that the court's charge covered the principle contained in Callahan's request to charge. The court therefore did not err in refusing to give the requested charge in the exact language requested. *Caldwell v. State*, 167 Ga. App. 692, 695 (307 SE2d 511).

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JUNE 16, 1986 —
REHEARING DENIED JULY 1, 1986 — 

*W. Michael Maloof, Jerome Froelick*, for appellant.
*Robert E. Wilson*, District Attorney, *Robert Morton, Barbara Conroy*, Assistant District Attorneys, for appellee.