## 43044. HENDERSON v. THE STATE.
### (341 SE2d 439)

Gregory, Justice.

Maurice "Zero" Henderson was convicted of murder,[1] arson and rape. The defendant was sentenced to consecutive terms of life imprisonment for the offenses of murder and rape, and to a consecutive term of 20 years for the crime of arson.

The victim, Margaret Eaton, was an administration services supervisor at The Regional Youth Development Center (RYDC) in Dalton, Georgia. Three months prior to the murder, the defendant had been hired by the RYDC as a houseparent. The defendant reported to work at the RYDC just before midnight, December 25, 1984, to begin a shift that would end at 8:00 a.m., December 26. Mrs. Eaton, who normally did not work this shift with the defendant, was filling in for a sick houseparent.

At approximately 5:30 a.m. on December 26, the defendant reported to the fire department that a car was in flames behind the RYDC. Mrs. Eaton's body, burned beyond recognition, was discovered in the car. The cause of death was determined to be asphyxiation from smoke inhalation, and burns. The State offered medical evidence to show that Mrs. Eaton had two broken ribs and had been raped.

At the scene of the crime the defendant told police officers that at approximately 4:00 a.m. the victim had received a phone call which "upset" her, and left the RYDC minutes thereafter. An entry in the RYDC logbook made in Mrs. Eaton's handwriting states that she received a call at 4:00 a.m. An entry made by the defendant in the logbook indicates that Mrs. Eaton left the RYDC at 4:16 a.m. The de-

---

[1] The crimes were committed on December 26, 1984. The defendant was indicted on March 4, 1985. On March 22, 1985 the State gave formal notice of its intention to seek the death penalty. The verdict was returned on June 6, 1985. That same day the jury fixed the penalty for murder at life imprisonment, and the trial court imposed sentence on the two remaining counts. The motion for new trial was denied November 15, 1985. The case was docketed in this court on December 23, 1985 and briefs were received from the parties on March 18, 1986.

fendant was arrested for the victim's murder on December 26, 1984.

A forensic serologist from the State Crime Lab testified that while some human blood was found on a stick and a door at the RYDC, it was of an amount insufficient to type. This expert found "the presence of blood" on a shoe worn by the defendant on the night of the murder, but was unable to detect whether it was human blood. A microanalyst from the State Crime Lab testified the hair samples recovered from the RYDC did not match the defendant's hair; further, his examination of the defendant's hair shortly after the murder failed to reveal the presence of soot.

On February 25, 1985, the defendant made a statement to police that Bobby Hinton, the houseparent at the RYDC who worked the shift of duty just prior to defendant's shift on the night of the murder, killed Margaret Eaton. At trial the defendant testified that at approximately 12:40 on the night of the murder, Hinton returned to the RYDC, stating he had forgotten to turn in some keys. The defendant testified that when Hinton reached into his pocket, a packet of cocaine fell to the floor. Mrs. Eaton informed Hinton she would have to report his possession of drugs to the director of the RYDC. The defendant testified Hinton became agitated in response and "jerked at" Mrs. Eaton's hair. Hinton later "grabbed" Mrs. Eaton and asked if she still intended to report him; when she responded affirmatively, Hinton pushed her to the floor. The defendant testified that in both of these instances he intervened and Hinton refrained from harming the victim further. Hinton then led Eaton to a room in the women's dormitory. Listening to their conversation over the intercom, the defendant heard Hinton tell Mrs. Eaton he would give her a "hot" VCR if she would not report that he had cocaine in his possession. Eaton refused the offer. The defendant testified that thereafter Hinton took Eaton by the arm and led her into the parking lot of the RYDC. The defendant followed them, and again heard Hinton offer the VCR to Eaton in exchange for her silence. When Eaton declined, Hinton pushed her head into her car door, then kicked her as she fell to the pavement. According to the defendant, Eaton got into her automobile and drove off "erratically," stalling in a nearby ditch. Hinton followed her, and Eaton got out of her car, screaming for help. The defendant testified that he panicked at that point and went back inside the RYDC. Approximately fifteen minutes later Hinton returned to the RYDC and told the defendant, "Look, don't worry about it. I'm an ex-cop. I made everything look like an accident." At the defendant's insistence, Hinton left the RYDC. The defendant testified that these events occurred around 2:00 a.m. He testified further that when he logged in his report to the fire department, he noticed that Eaton had made an entry that she received a call at *4:00 a.m.* Because he had not reported any of these events to the authorities,

the defendant testified he panicked and made a log entry that Mrs. Eaton left the RYDC at 4:16 a.m.

Bobby Hinton denied committing the crimes and testified that he had been with his girl friend, Cheryl Davis, from 12:30 a.m. until 10:30 a.m. on December 26. Davis corroborated Hinton's testimony in this regard.

1. The sole defense at trial was that Bobby Hinton, rather than the defendant, committed the crimes charged when Mrs. Eaton stated she would report Hinton to the authorities for possessing cocaine on the premises of the RYDC. In furtherance of this defense the defendant attempted to cross-examine Bobby Hinton regarding whether Hinton had in the past used or sold cocaine. The trial court sustained the State's objection on the ground of relevancy, ruling that the defendant could ask Hinton whether he had cocaine in his possession on the night of the murder, but refused to allow the defendant to inquire about Hinton's dealings in or use of cocaine at any other time. The defendant informed the trial court that he would be able to prove that Hinton "is in the business of selling cocaine." The court responded that it would not allow the defendant to introduce this evidence unless it was directly "connected with the evening in question."

We find that the evidence offered was relevant and its exclusion was harmful error. The defendant maintained Hinton had committed the crimes with which the defendant was charged, and offered evidence to prove Hinton's motive in committing these crimes. That motive was to prevent Margaret Eaton from disclosing Hinton's illegal drug activities. Therefore, the evidence that Hinton was known in the community to be involved in illegal drug activities renders the desired inference that he committed the crimes in this case more probable than would be that inference without the evidence. See McCormick, Evidence, 2d ed., § 185, p. 437. Its exclusion cannot be considered harmless error. It bears directly on the sole defense in the case. Compare *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). Evidence enough to raise a reasonable doubt of defendant's guilt in the mind of a juror, not evidence sufficient to convict Hinton, would be adequate to change the outcome of this case. Both the rules of evidence and fairness lead to the result that defendant should be allowed to prove, if he can, that Hinton is in the business of selling drugs so that defendant's testimony of the events on the night in question stands in a more believable light. The case must, therefore, be reversed.

2. We further find that the trial court erred in granting Bobby Hinton's motion to quash the subpoena duces tecum the defendant served on him pursuant to OCGA § 24-10-22. This subpoena sought,

inter alia,[2] copies of Hinton's bank records and income tax returns for the years 1980-1984. The defendant maintained he intended to show that Hinton's income was much higher than the salary he received from the RYDC due to profits from drug trafficking. The trial court ruled these records would not be relevant to the issues in the case. For the reasons expressed in Division 1 of this opinion, we do not agree.

3. Prior to trial the defendant served a subpoena duces tecum, pursuant to OCGA § 24-10-22, on the chief of the Dalton Police Department, seeking the personnel file of Bobby Hinton, a former police officer. The chief of police moved to quash the subpoena, maintaining it was unreasonable and oppressive. OCGA § 24-10-22 (b) (1). At the hearing on the motion to quash, the defendant argued that knowledge of the training in murder, arson and rape cases Hinton received as a police officer would be critical to his defense that Hinton committed the crimes, then expertly concealed his involvement in them. The trial court granted the motion to quash, finding that the defendant failed to show the document sought would be relevant to the issues raised at trial. The State concedes the personnel file in question is a document which may be reached by subpoena under the authority of OCGA §§ 24-10-22 and 24-10-29. Under OCGA § 24-10-22 (b) (1), the trial court may quash or modify the subpoena if it is "unreasonable or oppressive." Here the trial court found the subpoena unreasonable and oppressive because it related to irrelevant matters. We do not agree the matter was irrelevant. Anything in these documents tending to show training Hinton received which would enable him to commit and cover up the crimes involved in this case is relevant to the defendant's contention that Hinton committed the crimes. Therefore, the trial court erred in quashing the subpoena, as to this portion of the file, on the ground of relevancy.

The documents sought were not included in the record on appeal. In light of our inability to review them, we point out that the trial court may, on remand, delete privileged or irrelevant material from them.

4. We have examined the defendant's remaining enumerations of error and have found them to be either without merit, or unlikely to occur on retrial.

5. In light of the fact the State may decide to retry the defendant, we have examined the evidence under the criteria of *Jackson v.*

---

[2] The subpoena duces tecum ordered Hinton to bring with him numerous other items of physical evidence. On appeal, however, the defendant complains only that the trial court erred in quashing it as to Hinton's bank records and income tax returns. We express no opinion as to whether the trial court erred in granting the motion to quash the subpoena duces tecum as to the remaining items.

*Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and conclude a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes charged. Therefore, a retrial of the defendant is not barred by the principles of double jeopardy.

*Judgment reversed. Marshall, C. J., Clarke, P. J., Weltner and Bell JJ., concur. Smith, J. dissents as to Divisions 2 and 3.*

DECIDED APRIL 9, 1986 —
RECONSIDERATION DENIED APRIL 23, 1986.

*Rodney H. Roberts,* for appellant.

*Jack O. Partain III, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.