## S99A0962. SAPP v. THE STATE.
(520 SE2d 462)

SEARS, Justice.

Appellant Adrian Charles Sapp appeals his convictions and life sentence for felony murder and related crimes.[1] Having reviewed the record, we conclude that the evidence was sufficient to warrant the jury's guilty verdicts. However, we also conclude that a charging error made by the trial court concerning the impeachment of witnesses was harmful, and therefore requires that we reverse appellant's convictions.

The evidence introduced at trial authorized the jury to find that on the morning of March 3, 1997, appellant forced his way into the Albany apartment of Charles McClendon and Dennis Bridges. McClendon, appellant's former job supervisor, had terminated appellant's employment several weeks earlier. Appellant held the two men at gunpoint, and after striking McClendon several times, demanded that he write out several checks in appellant's name. Once McClendon had done that, appellant began to beat and choke him. Bridges

---

[1] The murder was committed on March 3, 1997, and on August 7, 1997, appellant was indicted on charges of murder, felony murder, burglary, armed robbery, false imprisonment, forgery, and illegal firearm possession. After a trial held from September 8-11, 1997, appellant was convicted of felony murder (with aggravated assault as the underlying felony), burglary, armed robbery, false imprisonment (two counts), forgery (two counts) and illegal firearms possession. On September 12, 1997, appellant was sentenced to life imprisonment for felony murder, twenty concurrent years for burglary, twenty consecutive years for armed robbery, ten concurrent years for each false imprisonment and forgery conviction, and five consecutive years for illegal firearms possession. Appellant's new trial motion was filed on October 10, 1997 and denied on February 15, 1999. Appellant's notice of appeal was filed on March 17, 1999. The appeal was docketed with this Court on April 1, 1999, and submitted for decision without oral argument on May 24, 1999.

ran for help, but by the time police officers arrived, McClendon's throat had been slashed, causing him to bleed to death.

Later that same day, appellant tried unsuccessfully to cash McClendon's checks at two different banks, and at least one of the bank managers became suspicious because the signature on the check did not match McClendon's signature on file. Appellant attempted to explain to the bank manager that McClendon's checks were for unemployment compensation, to no avail. Appellant then went to his girlfriend's apartment, and when she confronted him with what she had heard about the murder, he told her that he "hadn't meant to do it, but things had gotten out of hand."

Appellant was arrested ten days later. During the course of the investigation, police learned that after appellant had been fired from his job, he had driven a former co-worker past McClendon's home. Appellant told the co-worker that he intended to surprise McClendon one morning as he prepared for work, tie him up, put him in the back of a truck, and steal his car and sell it.

At trial, one of the State's primary witnesses was Bridges, who had known appellant before the attack occurred, and who positively identified appellant as the assailant. The jury rejected appellant's theory that McClendon had voluntarily given him the checks after agreeing to lend him money, and that it was Bridges who had killed McClendon sometime after appellant left their apartment.

1. The evidence introduced at trial, construed most favorably to the verdict, was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes of which he was convicted.[2]

Specifically, contrary to appellant's contention, the evidence was sufficient to warrant his convictions for forgery. One commits forgery "when with intent to defraud he knowingly makes . . . or possesses any writing . . . in such a manner that the writing as made or altered purports to have been made . . . by authority of one who did not give such authority and utters or delivers such writing."[3] There was evidence showing that McClendon wrote the checks while being held at gunpoint after being beaten by appellant. Clearly, under these circumstances, McClendon did not authorize his signature on the checks, and when appellant subsequently tried to cash the checks at area banks, he intentionally purported that they were made under the "authority of one who did not give such authority,"[4] thereby committing forgery.

2. Appellant contends that the trial court erred in failing to give

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] OCGA § 16-9-1.
[4] Id.

his requested charge on witness impeachment. As noted above, the State's primary witness was Bridges, who claimed to have witnessed the attack and who identified appellant as the assailant. Appellant contended, however, that the victim had agreed to lend him money and had voluntarily written the checks to him, and that Bridges had then killed the victim sometime after appellant left their apartment. In order to impeach Bridges's testimony, and to bolster appellant's theory of the crime, the defense introduced into evidence certified copies of Bridges's prior convictions for theft by taking, illegal firearm possession, shoplifting, making terroristic threats, and giving a false name to police officers. Despite the introduction of this evidence, the trial court refused to instruct the jury that a witness's credibility may be impeached by evidence that he has been convicted of a crime involving moral turpitude.

"To impeach a witness is to prove the witness is unworthy of belief. A witness may be impeached by . . . proof of general bad character, [or by] proof that the witness has been convicted of a crime involving moral turpitude."[5] In order to discredit a witness on the basis of a conviction for a crime of moral turpitude, a certified copy of the record of conviction must be introduced into evidence; absent a waiver of the "best evidence rule," no other showing will suffice.[6] When a witness is impeached by proper evidence of a conviction involving moral turpitude, a trial court errs when it refuses to give a requested charge on impeachment.[7] Theft, shoplifting, the making of terroristic threats, and the giving of a false name to a police officer all are crimes of moral turpitude. At trial, appellant introduced certified copies of Bridges's convictions for those crimes. Therefore, the trial court plainly erred by refusing to give appellant's requested jury instruction on witness impeachment.

We cannot say that this error was harmless. Bridges was the State's main witness, the only witness who could place appellant in the apartment at the time the victim was murdered, and the only witness who claimed to have watched the attack as it occurred. All other evidence against appellant was circumstantial. The jury could have convicted appellant solely on the basis of Bridges's testimony. Moreover, appellant claimed that it was Bridges who actually committed the murder, a claim that Bridges strongly denied from the witness stand. Hence, the jury's assessment of Bridges's credibility was crucial to its adjudication of appellant's guilt, and it should have

---

[5] Suggested Pattern Jury Instructions, Vol. II, p. 27 (1991); see *Kyler v. State*, 270 Ga. 81, 83 (508 SE2d 152) (1998); *O'Toole v. State*, 258 Ga. 614, 616 (373 SE2d 12) (1988).

[6] *Richards v. State*, 157 Ga. App. 601, 603 (278 SE2d 63) (1981).

[7] See *McIntyre v. State*, 266 Ga. 7, 10 (463 SE2d 476) (1995); *Kitchens v. State*, 235 Ga. App. 349, 353 (509 SE2d 391) (1998).

been informed that in making that assessment, it could consider Bridges's prior convictions. Because Bridges's testimony was fundamentally critical to the State's case against appellant, we cannot say there is no reasonable probability that the jury's verdict would have been different absent the trial court's erroneous failure to instruct on witness impeachment.[8] It follows that the error was harmful, and that appellant's convictions must be reversed.

3. In appellant's defense, several witnesses testified as to his general reputation for good character. However, despite the introduction of this evidence, the trial court failed to give appellant's requested charge on good character.[9] Good character is a substantive fact at trial, and can by itself create a reasonable doubt as to a defendant's guilt and lead to an acquittal.[10] Therefore, whenever there is evidence to support a charge on good character, and a defendant requests that such a charge be given, the jury must be instructed that it may consider good character evidence in its deliberations.[11] It follows in this case that the trial court erred in failing to give appellant's requested good character charge. Because of our ruling in Division 2, supra, it is not necessary for us to determine whether this error was harmless in light of the overwhelming evidence of appellant's guilt.[12]

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 13, 1999.

*David E. Perry,* for appellant.

*Kenneth B. Hodges III, District Attorney, Gregory W. Edwards, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.

---

[8] See *Felder v. State*, 266 Ga. 574, 576 (468 SE2d 769) (1996).

[9] See OCGA § 24-9-20 (b).

[10] *Duvall v. State*, 259 Ga. 801, 802 (387 SE2d 880) (1990).

[11] Id.

[12] Id., 259 Ga. at 803; *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976) (erroneous failure to instruct jury on good character is harmless where it is not highly probable that the omitted charge contributed to the jury's guilty verdicts).