S01A1042. CASTLEBERRY v. THE STATE.
(553 SE2d 606)

HINES, Justice.

A jury found Willie Marion Castleberry guilty of felony murder, armed robbery, and aggravated assault in connection with the fatal shooting of service station operator Eugene McCorkle Johnson. Castleberry appeals his convictions, claiming error in the trial court's sustaining the State's objection to certain cross-examination, prosecutorial misconduct by the mention of a polygraph, and the ineffective assistance of trial counsel. Finding the claims to be without merit, we affirm.[1]

---

[1] The crimes occurred on October 23, 1975. On August 30, 1999, a McDuffie County grand jury indicted Castleberry for malice murder, felony murder while in the commission of armed robbery and/or aggravated assault, armed robbery, aggravated assault, and possession of a firearm during the commission of armed robbery and/or aggravated assault. A jury trial was held September 20-21, 1999, and Castleberry was found guilty of felony murder, armed robbery, and aggravated assault; he was found not guilty of malice murder and possession of a firearm during the commission of a crime. On September 21, 1999, Castleberry was sentenced to life imprisonment for felony murder. The armed robbery and aggravated assault were found merged for the purpose of sentencing. Trial counsel filed a motion for new trial on October 12, 1999. Appointed appellate counsel filed a motion for new trial on October 21, 1999. A new trial was denied on January 3, 2001. A notice of appeal was filed on January 10, 2001, and the appeal was docketed in this Court on April 11, 2001. The case was submitted for decision on June 4, 2001.

On October 23, 1975, the police were summoned to McCorkle's Service Station on Old Augusta Highway in McDuffie County. When they arrived, Johnson, who ran the station in the evenings, was being loaded into the ambulance. He was later pronounced dead on arrival at the hospital. Johnson had sustained three gunshot wounds: in the left side of the face, in the back of the upper left arm, and in the back of the torso, damaging the left lung and the heart. The resulting hemorrhage led to Johnson's death. Two of the wounds were caused by .38 caliber bullets.

Inside the service station, the police found blood drops on the counter and on the floor behind the counter. The cash register drawer was open and empty of bills. There was a beer can in a paper sack sitting on the counter. The police also found a pistol, identified as belonging to Johnson, several bullet casings, and a lead slug from a bullet. The "bullet" was near the blood on the floor behind the counter. The pistol had been fired five times.

Agent Talkington with the Georgia Bureau of Investigation (GBI) was assigned to the case in 1997. When going through the file, Talkington found latent fingerprints which had been lifted from the paper sack containing the beer can found on the station counter. Aware that a new method of comparing fingerprints had been developed since the initial investigation of the case, Talkington resubmitted the fingerprints to the GBI laboratory. They were entered into the Automated Fingerprint Identification System (AFIS), and a match was made with Castleberry. Talkington interviewed Castleberry and took fingerprints from him. The fingerprints were submitted to the crime laboratory, where it was determined that they matched the latent fingerprints taken from the crime scene.

Talkington first interviewed Castleberry on November 20, 1998. As the interview progressed, Castleberry admitted being present when Johnson was killed but claimed that his companion, T. C. Butler, killed Johnson. On November 24, 1998, GBI Agent Rush interviewed Castleberry. Castleberry stated that he and "T. C." went into the store "to pull a robbery," that Castleberry did not intend for anyone to get hurt, but that "T. C." panicked and shot the owner.

Butler pled guilty to Johnson's murder and was sentenced prior to Castleberry's trial. As a State's witness, he testified that it was Castleberry's idea to commit the robbery and that he agreed. Further, he stated that Castleberry had a .22 caliber pistol and that he had a .38 caliber pistol. They agreed that Castleberry would enter the station first and distract Johnson, then hold a pistol on him while Butler taped him up. Butler testified that when he entered the station, Castleberry already had his pistol out. Butler saw Johnson grab a pistol. Then Castleberry fired at Johnson one or two times, but Butler did not know whether the bullets struck Johnson. Butler then

shot Johnson twice. Castleberry grabbed the money before they drove away. They later divided it, getting $50 to $60 a piece, before Butler dropped Castleberry off at a club. Butler threw his pistol off a bridge before going home.

At trial, Castleberry testified that he did not have a handgun and did not know Butler had one until he saw him shoot Johnson. He denied there was any robbery plan or that he had ever told police that there was. He further denied taking any money from the cash register or receiving any money from the robbery. Castleberry said that he did not report the crime to the police because he feared for himself and his family.

1. Witness credibility is a matter for the jury. OCGA § 24-9-80; *Akins v. State*, 269 Ga. 838, 839 (1) (504 SE2d 196) (1998). The evidence was sufficient for a rational trier of fact to find Castleberry guilty beyond a reasonable doubt of the felony murder of Johnson. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During Castleberry's cross-examination of Butler, the State objected to his asking Butler if he pled guilty to Johnson's murder on the basis that this was improper impeachment, and the trial court sustained the objection. Castleberry contends this was error, arguing that, like the defendant in *Henderson v. State*, 255 Ga. 687 (341 SE2d 439) (1986), he was attempting to determine the extent of the co-defendant's culpability because if Butler acknowledged he committed and pled guilty to murder, then sole blame could be placed on him. He further complains that the court's ruling caused him to have to introduce a copy of the plea into evidence, thereby precluding him from the right to the opening and concluding argument. But Castleberry's complaints are unavailing.

Contrary to what Castleberry now urges, at trial, Castleberry's apparent reason for questioning Butler about his plea to the murder was to impeach Butler.[2] "In order to discredit a witness on the basis of a conviction for a crime of moral turpitude, a certified copy of the record of conviction must be introduced into evidence; absent a waiver of the 'best evidence rule,' no other showing will suffice." *Sapp v. State*, 271 Ga. 446, 448 (2) (520 SE2d 462) (1999). Therefore, the court correctly sustained the State's objection of an improper attempt at impeachment.

Even if Castleberry's reason for questioning Butler about his conviction for Johnson's murder had been to attempt to establish Butler's sole culpability, a defendant does not have the unfettered right to cross-examine an accomplice about the accomplice's plea of

---

[2] Castleberry did not dispute the State's characterization of his query as an attempt to impeach Butler.

guilty. *Barnes v. State*, 269 Ga. 345, 354 (15) (496 SE2d 674) (1998). In *Barnes*, this Court determined that the proscription in OCGA § 24-3-52[3] is inapplicable where the accomplice takes the stand and is subject to cross-examination, and consequently that the accomplice's guilty plea might be "used for a limited evidentiary purpose, such as to reflect on the witness' credibility." *Barnes v. State* at 354 (15), citing *Foster v. State*, 178 Ga. App. 478 (1) (343 SE2d 745) (1986). But *Barnes* in no manner absolved a defendant of the requirement of properly introducing the accomplice's conviction into evidence. See *Foster v. State* at 478 (1).

Finally, Castleberry's reliance on *Henderson v. State*, supra, is misplaced. There, the defendant attempted to cross-examine a witness, whom he claimed was the perpetrator, about whether the witness had previously used or sold cocaine, which was relevant to the motive that the defendant claimed the witness had to commit the crimes; but the trial court sustained the State's objection on the basis of relevancy. Id. at 689 (1). This Court found that the evidence was relevant and its exclusion was harmful error. Id. Unlike *Henderson*, Butler's commission of the murder would not exculpate Castleberry as the evidence authorized the finding that Castleberry was a full participant in the criminal enterprise resulting in the murder, even if he did not fire the fatal gunshots. What is more, the evidence was not excluded on the basis of relevancy and Castleberry was not precluded from informing the jury of Butler's culpability. It was Castleberry's choice and a matter of defense strategy whether to properly introduce evidence of the conviction.

3. Castleberry next contends that the State was guilty of misconduct by violating the court's ruling that there was to be no mention of a polygraph he took. He urges that it was misconduct when the State asked GBI Agent Rush about his professional qualifications including the fact that he had a specialty in polygraph. But Castleberry made no objection at trial to the question, and therefore, he is precluded from challenging it on appeal. *Moody v. State*, 273 Ga. 24, 26 (3) (537 SE2d 666) (2000).

Even if proper objection had been made, the fact that a jury is apprised that a polygraph was taken does not necessarily result in prejudice if no inference is raised as to the result. *Gulley v. State*, 271 Ga. 337, 348 (16) (519 SE2d 655) (1999). The mere mention of the agent's qualifications did not imply that Castleberry was given a polygraph, much less the result. Castleberry further argues prejudice because the agent later testified about the statement that Castle-

---

[3] OCGA § 24-3-52 provides: "The confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself."

berry made to him and on cross-examination related that he told Castleberry that he did not believe that Castleberry was telling him the truth. But contrary to Castleberry's assertion, there was no indication that the statement was made post-polygraph. Compare *Stack v. State*, 234 Ga. 19, 21 (1) (c) (214 SE2d 514) (1975).

4. Castleberry fails in his final claim that he was not afforded the effective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, the outcome of the defendant's trial would have been different. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This Castleberry cannot do.

Castleberry claims his trial counsel was ineffective because of counsel's inexperience in murder cases; because of counsel's failure to obtain certain discovery; and because counsel did not attempt impeachment based on certain inconsistencies, did not elicit evidence of Castleberry's cooperation with authorities, and did not object to the State's injection of evidence of the polygraph. But the evidence at the hearing in the matter revealed that the attorney had tried other murder cases and had extensive experience in criminal matters; that the attorney reviewed the tapes in question; that he made tactical decisions about the questioning of witnesses and the presentation of other evidence based on his numerous meetings and discussions with Castleberry and the resulting chosen line of defense; and that he did not object to the mention of the polygraph because he did not want to draw attention to it.

A charge of ineffective assistance of counsel is not judged by a standard of errorless counsel or by hindsight, but rather whether counsel rendered reasonably effective assistance; there is a critical distinction between inadequate preparation and unwise choices of trial tactics and strategy, which are not to be judged by hindsight or result. *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998). Here, the record supports the finding that the attorney's strategy and conduct of Castleberry's case did not constitute ineffective assistance.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Hunstein and Carley, JJ., who concur specially.*

FLETCHER, Chief Justice, concurring specially.

I would hold that a defendant is entitled to cross-examine his co-indictee about the co-indictee's plea of guilty. Therefore, I respectfully disagree with Division 2 of the majority opinion.

1. The exclusion of testimony about a co-indictee's guilty plea runs afoul of a defendant's right of confrontation. This Court is

required to scrutinize carefully the rationale behind an exclusionary evidentiary rule and weigh it against a defendant's Sixth Amendment right to confront and cross-examine witnesses against him.[4] The stated rationale for the proscription against cross-examining a witness about a prior conviction is that the mere questioning of a witness about a prior conviction "can be prejudicial even though a negative answer be truthful."[5] Any logic in this rationale vanishes when applied to a defendant's cross-examination of a co-indictee testifying for the prosecution.[6] Furthermore, the State's interest in not prejudicing its own case by keeping highly relevant, truthful information from the jury does not outweigh the defendant's Sixth Amendment right to confront his accusers, especially in light of the available alternatives to ameliorate any unfair prejudice. For example, cautionary instructions are often used to cure the improper introduction of prejudicial testimony, and the trial court's contempt power is available when a lawyer has no legitimate basis for asking about a conviction. Furthermore, a witness's admission on the stand that he stood before a judge and acknowledged his guilt may be more effective than the introduction into evidence of the bland plea agreement.

2. Even if the majority's opinion did not raise Sixth Amendment concerns, I would still hold that questioning a co-indictee about his guilty plea or conviction was not subject to a best evidence objection. By questioning Butler about his plea of guilty to Johnson's murder, Castleberry sought to establish that Butler was solely responsible for the murder. Castleberry was not attempting to impeach Butler's credibility by showing that Butler had been convicted of a crime of moral turpitude. Therefore, the general principle that a witness may be impeached with a prior conviction only by introducing a certified copy of the conviction is inapplicable here.

Nevertheless, the evidence, including Castleberry's own statements to police, was overwhelming, and I concur in the affirmance of the conviction.

I am authorized to state that Justice Hunstein and Justice Carley join in Division 2 of this special concurrence.

DECIDED OCTOBER 1, 2001.

*Jimmy D. Plunkett*, for appellant.

---

[4] *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973).

[5] See *Timberlake v. State*, 246 Ga. 488, 499 (271 SE2d 792) (1980).

[6] The logic of the rule is weak in any instance. See *Williams v. United States*, 3 F.2d 129 (8th Cir. 1924) (canvassing rationales and rejecting rule and noting majority rule permits questioning witness on cross-examination about a prior felony conviction); Paul S. Milich, *Georgia Rules of Evidence* § 14.4, n.11 (1995) (noting that the rule has been abandoned in most jurisdictions).

*Dennis C. Sanders, District Attorney, Thurbert E. Baker, Attorney General, Ruth M. Bebko, Assistant Attorney General*, for appellee.