A02A1115. SCOTT v. THE STATE.
(563 SE2d 554)

ELDRIDGE, Judge.

A Cobb County jury found Raymond Nathaniel Scott guilty of trafficking in cocaine, disregarding a stop sign, driving without a license, and driving with no proof of insurance, which charges arose when Scott was stopped for running a four-way stop sign at the intersection of Maxwell Avenue and Wright Street in Marietta; pursuant to an impound search of the vehicle Scott was driving, 33.3 grams of cocaine with a purity level of 74 percent were found in the center console of the car. He appeals, and we affirm.

1. Citing our decision in *Barnett v. State*,[1] Scott contends the trial court erred in denying his motion for directed verdict because a fatal variance existed between the allegations of the indictment and the proof at trial in that the State failed to prove that the cocaine at issue was 28 grams of *pure* cocaine, as alleged in the indictment.

(a) Scott did not raise this issue at the time he made his motion for directed verdict.

> Because the record fails to demonstrate that [Scott] raised the fatal variance issue on his [trafficking] conviction[ ] in the trial court, we may not address it here. Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.[2]

(b) Further, this contention is substantively meritless. Unlike the cases cited by Scott, the indictment in this case did not charge that Scott was in possession of at least "28 grams of cocaine" so as to require the State to prove possession of a like amount of *pure* cocaine. Instead, the indictment charged Scott with possession of at least "28 grams of cocaine, a mixture with a purity of at least 10 percent of cocaine as described in Schedule II." The State proved Scott's possession of 33.3 grams of cocaine with a purity of 74 percent. There was no fatal variance between the allegata and probata.

2. Next, Scott contends that the trial court permitted the jury to convict him in a manner not set forth in the indictment when the court charged the jury, "any person who is knowingly in possession of 28 grams or more of cocaine or any mixture with a purity of 10 percent or more of cocaine, as described in schedule two, commits the felony offense of trafficking in cocaine." Scott claims that such charge permitted the jury to find him guilty under the mixture language when the indictment alleged possession of 28 grams of pure cocaine.

(a) When asked, Scott failed to reserve exception to the trial court's charge, opting instead to go "[o]nly with the objection that arose earlier," which was not the claim of error alleged above. Thus, this claim is waived.[3]

---

[1] 204 Ga. App. 491 (420 SE2d 43) (1992).

[2] *Jackson v. State*, 252 Ga. App. 16-17 (2) (555 SE2d 240) (2001).

[3] *Tolver v. State*, 269 Ga. 530, 533 (5) (500 SE2d 563) (1998); *Leggon v. State*, 249 Ga. App. 467, 468 (2) (549 SE2d 137) (2001).

(b) This contention is substantively meritless for the reasons discussed in Division 1, supra.

3. In two separate enumerations of error, Scott challenges the sufficiency of the evidence supporting his convictions for (a) disregarding a stop sign, and (b) driving without a license.

A jury's verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and the testimony of a single witness is generally sufficient to establish a fact.[4] Whether to believe a witness and the facts to which he testifies is solely within the province of the jury as finder of fact, since an appellate court determines evidence sufficiency and does not determine witness credibility.[5]

(a) Officer N. Drosakis testified that he executed a traffic stop of the vehicle Scott was driving because he observed the car "go through the intersection without stopping at the stop sign." In addition, the prosecutor used a diagram of the intersection and had the officer demonstrate to the jury when he first observed Scott's vehicle; how it "had run the stop sign at the intersection"; and how Scott's vehicle never "came to a complete stop."

OCGA § 40-6-72 (b) states in pertinent part that every driver of a vehicle approaching a stop sign "shall stop at a clearly marked stop line or, if there is no stop line, before entering the crosswalk on the near side of the intersection or, if there is no crosswalk, at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it."[6] Contrary to Scott's contention, it matters not that the State did not prove that the intersection in question had a "marked stop line," had a "crosswalk," or had a "point nearest the intersecting roadway," as described in the statute. These descriptions are of marks at which a driver is supposed to stop. Here, the State's evidence showed that Scott never stopped at all. The jury was authorized to believe the officer's testimony in that regard. Accordingly, a rational trier of fact could have found Scott guilty beyond a reasonable doubt of disregarding a stop sign.[7]

(b) We find totally without merit Scott's contention that proof that he was driving on the city streets of Marietta is not proof that he was driving on a "highway" so as to sustain a conviction for driving without a license under OCGA § 40-5-20 (a).[8] "Highway" means "the

---

[4] OCGA § 24-4-8; *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).

[5] *Kovacs v. State*, 227 Ga. App. 870 (1) (490 SE2d 539) (1997).

[6] OCGA § 40-6-72 (b).

[7] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[8] No person "shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license." OCGA § 40-5-20 (a).

entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."[9] Accordingly, evidence that Scott was driving on the streets of Marietta, was unable to produce a driver's license when asked, and, in fact, "didn't have one [a license] at all" was sufficient for a rational trier of fact to find Scott guilty beyond a reasonable doubt of driving without a license.[10]

4. Finally, Scott contends he received ineffective assistance of counsel at trial. We have reviewed the errors alleging ineffective assistance and find them each meritless.

(a) Any claims with regard to trial counsel's failure to complain about a fatal variance or a jury charge that "expanded" the indictment are decided adversely to Scott in Divisions 1 (b) and 2 (b), supra. It is well settled that the failure to make a meritless objection cannot be evidence of ineffective assistance.[11]

(b) Substantively without merit is Scott's claim that trial counsel failed to secure a ruling on the admissibility of evidence that another person, "Barney Gunn," rented the vehicle Scott was driving and was arrested subsequently for trafficking. Trial counsel desired to introduce such evidence, calling it "completely germane to the defense and . . . completely against the principles of justice not to let that matter come to light." However, on the State's pretrial motion, the trial court ruled out such evidence, which ruling is not challenged herein.

(c) We find no basis for objection to the State's evidence that the traffic stop occurred in a high drug sale/crime area. Such evidence went to prove the trafficking offense.

(d) Likewise, we find no basis for an objection by trial counsel to the State's closing argument decrying the destruction that crack cocaine has created in communities and in families. Notably, Scott's current appellate counsel provides no legal basis for such objection, and trial counsel testified at the hearing on the motion for new trial that "it was a fair argument for the State to make."

(e) The record shows that trial counsel adequately advised Scott with regard to his right to testify or remain silent, as did the trial court. Since the only rebuttal to the strength of the State's case and the only method to put forward the "someone-else-did-it" defense was for Scott to testify, we cannot find error in trial counsel so advising Scott. The fact that Scott gratuitously testified during cross-examination that he never "did no crimes," thereby permitting his criminal record to come into evidence in impeachment, does not

---

[9] OCGA § 40-1-1 (19).
[10] *Jackson v. Virginia*, supra.
[11] *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

reflect on the correctness of trial counsel's initial advice.[12] We do not judge ineffective assistance of counsel claims in hindsight.[13]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED APRIL 5, 2002.

*Ruth P. Marks*, for appellant.

*Patrick H. Head, District Attorney, H. Maddox Kilgore, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[12] The trial court's ruling with regard to the admissibility of Scott's criminal record for impeachment purposes is not challenged herein.

[13] *Castleberry v. State*, 274 Ga. 290, 294 (4) (553 SE2d 606) (2001).