## A03A0610. SIMONETTE v. THE STATE.
(584 SE2d 623)

RUFFIN, Presiding Judge.

A jury found Chris Simonette guilty of armed robbery. He appeals, challenging the trial court's failure to give a requested jury instruction. For reasons that follow, we affirm.

Viewed favorably to the verdict,[1] the evidence shows that, on March 8, 2000, a white car carrying four men and a woman stopped in front of Jose Carillo's truck as Carillo was driving through an apartment complex, forcing him to stop. Three men jumped out, approached the truck, and demanded Carillo's wallet. When one of the men pointed a gun at his head, Carillo surrendered his wallet. The men then returned to their car and fled.

Carillo followed his assailants to another apartment complex, spotted a police officer, and reported the robbery. As Carillo spoke to the officer, the white car drove by, and the officer pursued it. After a short distance, the car stopped suddenly. Three men ran from the vehicle, leaving one male and the woman in the car. The officer detained those two occupants, identified at trial as Antwan Lucas and Alethea Phelps, and police found two pellet pistols in the area.

[13] *Monsalve v. State,* 271 Ga. 523, 526 (3) (519 SE2d 915) (1999).
[1] See *Gay v. State,* 258 Ga. App. 854 (575 SE2d 740) (2002).

The police subsequently arrested Simonette, Marcus Woods, and Jason Sanders as the other participants in the crime.

Although Carillo identified Lucas, he did not recognize the other three men. He testified, however, that the man who pointed the pistol at him had been riding in the car's front passenger seat before the robbery.

Lucas, Sanders, and Woods testified at trial and implicated Simonette in the crime. According to all three, Simonette was one of the men who jumped out of the white car. Lucas further testified that Simonette held a pellet pistol, and Woods stated that Simonette. pointed the pistol at Carillo's head. Both Lucas and Woods claimed that Simonette was in the white car's front passenger seat before the robbery.

Defense counsel established on cross-examination that Lucas, Sanders, and Woods had been indicted with Simonette for armed robbery, but reached plea agreements with the State. Lucas testified that he pled guilty to the lesser offense of robbery by intimidation. Sanders admitted that he was charged with armed robbery, "entered a plea and got 12 months probation." Finally, Woods stated that he pled guilty to theft and received 12 months probation.

Based on this testimony, defense counsel requested in writing that the court instruct the jury on various impeachment principles, including that a witness "may be impeached by . . . proof that the witness has been convicted of a crime involving moral turpitude." The trial court gave part of the requested impeachment charge, but refused to instruct on crimes of moral turpitude because no certified copies of convictions had been entered into evidence. Simonette enumerates this refusal as error.

Absent a best evidence objection, "the testimony of a witness admitting a prior conviction for a crime of moral turpitude is sufficient evidence of the fact to authorize a charge on impeachment by conviction."[2] The State thus concedes on appeal that, given Woods' testimony regarding his theft conviction, the trial court erred in not charging the jury on this form of impeachment.[3] Nevertheless, it contends that the error was harmless.

"The standard for harmless error in jury charges in criminal cases is whether it is highly probable that the error contributed to the verdict."[4] The parties dispute whether Simonette established that

---

[2] *Harwell v. State*, 270 Ga. 765, 770 (2) (512 SE2d 892) (1999).

[3] See *Sapp v. State*, 271 Ga. 446, 448 (2) (520 SE2d 462) (1999) (theft is a crime of moral turpitude); see also *Mika v. State*, 256 Ga. App. 546, 548 (4) (568 SE2d 818) (2002) (accomplice's testimony that he had been convicted of crime of moral turpitude for his involvement in incident at issue in case provided evidentiary basis for impeachment charge).

[4] *Gay*, supra at 856 (3).

all three men had convictions for crimes of moral turpitude. The State notes that Lucas had not yet been sentenced at the time of Simonette's trial and that Sanders never specified the crime to which he pled guilty. Even assuming, however, that the testimony of each supported an impeachment charge, we agree that the trial court's error was harmless.

At trial, defense counsel produced evidence that Lucas, Sanders, and Woods admitted their involvement in the crime, but pled guilty to lesser offenses carrying shorter prison sentences than armed robbery. He further established that Sanders and Woods received only probation for their participation and that Lucas, when sentenced, would immediately be eligible for parole. In essence, defense counsel showed the jury that the three men testifying against Simonette obtained favorable deals from the prosecution in exchange for their pleas and testimony.

The trial judge instructed the jury on witness credibility, noting the various factors that may be considered in resolving credibility issues:

> You must determine the credibility or believability of the witnesses. It is for you to determine what witness or witnesses you will believe and which witness or witnesses you will not believe, if there are some you do not believe. In passing upon their credibility you may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their interest or lack of interest, their means and opportunity for knowing the facts which they testify about, the nature of the facts which they testify about, the probability or improbability of their testimony and of the occurrences which they testify about. You may also consider their personal credibility insofar as it may legitimately appear from the trial of this case.

Given this lengthy instruction, we cannot conclude that the court's charging error impacted the verdict. Defense counsel used the pleas entered by Lucas, Sanders, and Woods to attack their credibility, establish their potential bias, and reveal their motive for testifying against Simonette. Despite this attack, the jury believed their testimony and found Simonette guilty. We find it highly improbable that an additional jury instruction on impeachment through crimes of moral turpitude would have altered this result.

We recognize that, in many cases, the jury needs specific instruction on how to use evidence of a prior conviction, and failure to give

such instruction may constitute harmful error.[5] In this case, however, an impeachment instruction was not necessary to guide the jury in using evidence of the guilty pleas entered by Lucas, Sanders, and Woods. Defense counsel stressed that these pleas raised issues of bias, motivation, and self-interest, and the trial court instructed the jury that such issues impact witness credibility. Under these particular circumstances, the trial court's error was harmless.[6]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 5, 2003 —
RECONSIDERATION DENIED JULY 3, 2003.

*Stuckey & Manheimer, Stephanie S. Benfield,* for appellant.
Chris Simonette, *pro se.*
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney,* for appellee.

---

[5] See *Sapp,* supra at 448-449 (failure to give impeachment instruction harmful error in light of evidence that victim had been convicted of crime of moral turpitude).

[6] See *Ross v. State,* 231 Ga. App. 793, 798 (6) (499 SE2d 642) (1998) (defendant not prejudiced by trial counsel's failure to impeach accomplices with their convictions for crimes of moral turpitude because "the jury was already fully aware of the disreputable character of these witnesses by virtue of their own testimony on the stand"); see also *Evans v. State,* 209 Ga. App. 340, 341-342 (2) (433 SE2d 426) (1993) (failure to charge jury on wilful false swearing under OCGA § 24-9-85 (b) harmless given court's charges on impeachment and witness credibility).