## A11A0940. ARNETT v. THE STATE.
### (717 SE2d 312)

DOYLE, Judge.

A Catoosa County jury convicted Joseph Hamilton Arnett of distribution of marijuana[1] and possession of a firearm during the commission of a felony.[2] On appeal, Arnett contends that the trial court erred by (1) admitting his out-of-court statement, which was made without a *Miranda*[3] warning; (2) denying his motion for a directed verdict; (3) denying his motion for mistrial following the prosecutor's improper closing argument; and (4) failing to instruct the jury regarding the impeachment of a witness by conviction of a crime. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[4] the record shows that on February 11, 2010, Detectives James Stockard and Jeremy Keener were driving through a mobile home park when they witnessed what appeared to be a hand-to-hand drug transaction between Arnett and the passenger of a stopped vehicle. By the time the detectives reached the scene to investigate, Arnett had disappeared on foot, but his vehicle remained. The detectives approached Casey Crane and Shawn Lowrance, the occupants of the vehicle, and saw a plastic bag containing a substance later identified as marijuana protruding from Lowrance's coat pocket. Lowrance was holding a briefcase matching the description of one that had been reported stolen the night before, along with at least 20 firearms. At later dates, Crane and Lowrance both provided Stockard with written statements that Lowrance and Arnett had exchanged a pearl-handled pistol for marijuana.

On February 24, 2010, Stockard stopped Arnett's vehicle at a bank to discuss the investigation and ask for help recovering the stolen firearms. Arnett voluntarily followed Stockard to another parking lot for further discussion. Arnett admitted that Lowrance had contacted him the morning of February 11, 2010, because Lowrance wanted to trade a pearl-handled pistol for marijuana. Arnett also stated that he and Lowrance had agreed to meet at the mobile home park for the transaction.

---

[1] OCGA § 16-13-30 (j).
[2] OCGA § 16-11-106 (b) (4).
[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).
[4] See *Cantrell v. State*, 299 Ga. App. 746 (683 SE2d 676) (2009).

1. Arnett argues that the trial court erred by denying his motion in limine to exclude his out-of-court statement to Stockard, asserting that Stockard questioned him in violation of his constitutional rights. We disagree.

> When ruling on a motion to suppress, the trial court sits as the trier of facts, and its findings regarding them are not disturbed on appeal if there is any evidence to support them; the trial court's decisions with regard to questions of fact and credibility must be accepted unless clearly erroneous, and a reviewing court construes the evidence most favorably to the trial court's findings.[5]

Arnett argues that because his encounter with Stockard was a second-tier stop unsupported by reasonable suspicion, any statements he made at that time were inadmissible. This contention is without merit.

Police officers "may stop persons and detain them briefly" in a second-tier encounter.[6]

> An officer may conduct a brief investigative stop of a vehicle if that stop is justified by specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion. In determining whether an investigatory stop met these requirements, we examine whether the detaining officer had a particularized and objective basis for reasonably suspecting that the particular individual stopped was or had been engaged in criminal activity.[7]

The record shows that Stockard not only witnessed Arnett engaged in a drug transaction, but on the morning of the stop, he obtained a written statement from another party to the transaction confirming Arnett's involvement. Stockard also recognized Arnett and his vehicle from the scene. Thus, the record supports the trial court's ruling that Stockard reasonably suspected that Arnett was or had been engaged in criminal activity.[8]

Furthermore, we reject Arnett's apparent contention that because he was in custody at the time of his statement, he should have

---

[5] (Punctuation omitted.) *Whitmore v. State*, 289 Ga. App. 107 (657 SE2d 1) (2008).

[6] (Punctuation omitted.) *State v. Harris*, 261 Ga. App. 119, 121 (581 SE2d 736) (2003).

[7] (Citation and punctuation omitted.) *Jackson v. State*, 236 Ga. App. 492, 494 (1) (512 SE2d 24) (1999).

[8] See *Darden v. State*, 293 Ga. App. 127, 129-131 (1) (a) (666 SE2d 559) (2008).

been advised of his constitutional *Miranda* rights. As the officer testified, Arnett was not under arrest, and he made his statement after voluntarily following the officer from the bank parking lot to another location. "A reasonable person in [Arnett's] position would not have believed that [ ]he was being restrained to the degree associated with a formal arrest. Thus, [his] statement was not tainted by the absence of *Miranda* warnings."[9]

2. Arnett also contends that there was insufficient evidence to support his conviction and that the trial court incorrectly denied his motion for a directed verdict.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the state's witnesses, are a matter of credibility for the jury to resolve.[10]

Arnett makes several arguments based on assertions that (1) the only evidence linking him to the crimes was Lowrance's uncorroborated testimony, (2) he was convicted merely because he was seen talking to Crane and Lowrance, and (3) his statement to Stockard was inadmissible. The record belies these assertions, so Arnett's arguments fail.

Lowrance's testimony was corroborated by the observations of the detectives, the marijuana taken into evidence, the written statements of Crane and Lowrance regarding Arnett's involvement, and Arnett's own statement to Stockard. Moreover, as we determined in Division 1, Arnett's statements to Stockard were admissible. The evidence was sufficient for a rational trier of fact to find Arnett guilty beyond a reasonable doubt.[11]

3. Next, Arnett argues that the trial court erred by denying his motion for mistrial based on the prosecutor's use of the term "confessed" during her closing argument. According to Arnett, his statement was not a confession, presumably because he did not admit the entire criminal act, and therefore the prosecutor's use of the word "confessed" was improper and prejudicial.

---

[9] (Citations omitted.) *State v. Davison*, 280 Ga. 84, 88 (2) (623 SE2d 500) (2005).

[10] (Punctuation omitted.) *Hargrove v. State*, 289 Ga. App. 363 (657 SE2d 282) (2008).

[11] See OCGA §§ 16-13-30 (j), 16-11-106; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"The denial or grant of a motion for mistrial falls within the sound discretion of the trial court. The court's ruling on a motion for mistrial will not be disturbed on appeal unless it is shown that the trial judge manifestly abused that discretion. We find no abuse of discretion in this case."[12]

Attorneys [are] allowed all reasonable latitude in the argument of cases to a jury provided they do not go outside the facts legitimately appearing from the trial and "lug" in extraneous matters as if they were part of the case. Counsel may draw remote deductions and inferences from the evidence and there is no basis for objection even if the deductions and inferences are illogical or unreasonable.[13]

Pretermitting whether Arnett's statement constituted a confession, the prosecutor's characterization of Arnett's statement to Stockard was not an extraneous matter outside the facts legitimately produced during trial. "Moreover, the trial court instructed the jury that the evidence does not include opening and closing statements of the attorneys."[14] Finally, Arnett has failed to show that he was prejudiced or harmed by the prosecution's characterization of his statement.[15] Accordingly, this enumeration presents no basis for reversal.

4. Arnett contends that the trial court committed reversible error by refusing to instruct the jury regarding impeachment of a witness by prior conviction of a crime. We disagree.

At trial, Arnett introduced evidence that Lowrance had been convicted of two counts of entering an automobile. Thus, "it was error for the trial court to refuse to charge on impeachment by prior conviction."[16] Nevertheless, Arnett did not submit a written request for the charge,[17] and "[g]enerally, the failure to request the subject charge in writing precludes further complaint."[18]

Moreover, "[t]he failure to give a requested charge which is authorized by the evidence can be harmless error. The inquiry is whether it is highly probable that the error contributed to the

---

[12] (Citations omitted.) *Callahan v. State*, 179 Ga. App. 556, 563-564 (5) (347 SE2d 269) (1986).

[13] (Citation omitted.) Id. at 563 (5).

[14] *Odom v. State*, 304 Ga. App. 615, 618 (3) (b) (697 SE2d 289) (2010).

[15] See *Rainly v. State*, 307 Ga. App. 467, 477 (7) (705 SE2d 246) (2010).

[16] *Brown v. State*, 289 Ga. 259, 260 (2) (710 SE2d 751) (2011).

[17] Arnett claims that during the unreported charge conference, the trial court indicated that it would give the pattern charge on impeachment of witnesses but then subsequently omitted the portion on impeachment by proof of conviction of a crime while instructing the jury.

[18] *Whitaker v. State*, 283 Ga. 521, 526 (4) (661 SE2d 557) (2008).

verdict."[19] Here, even disregarding Lowrance's testimony, the evidence of Arnett's guilt — including the officer's observations of the transaction, Crane's written statement that Arnett gave Lowrance marijuana in exchange for a gun, and Arnett's admission that he agreed to meet Lowrance for the trade — was overwhelming.[20]

Finally, the trial court instructed the jury on witness credibility as follows:

> You must determine the credibility or believability of the witnesses. It is for you to determine which witness or witnesses you believe or do not believe if there are some whom you do not believe. In deciding credibility you may consider all the facts and circumstances of the case, the manner in which the witnesses testify, their interest or lack of interest in the case, their means and opportunity for knowing the facts about which they testify, the nature of the facts to which they testify, the probability or improbability of their testimony[,] and the occurrences about which they testify. You may also consider their personal credibility insofar as it may have been shown in your presence and by the evidence.

"Given this lengthy instruction, we cannot conclude that the court's charging error impacted the verdict."[21]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED OCTOBER 4, 2011.

*Perrotta, Cahn & Prieto, James A. Meaney III*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Jennifer A. Morris, Assistant District Attorney*, for appellee.

---

[19] (Citation and punctuation omitted.) *Brown*, 289 Ga. at 261 (2).
[20] See id. Compare *Sapp v. State*, 271 Ga. 446, 448-449 (2) (520 SE2d 462) (1999) (trial court's error in failing to give a charge on impeachment by proof of conviction of a crime was not harmless because the witness's testimony was critical).
[21] *Simonette v. State*, 262 Ga. App. 117, 119 (584 SE2d 623) (2003).